# EXHIBIT 1

Case 1:18-cv-00850-MN-CJB   Document 51-1   Filed 08/07/19   Page 2 of 93 PageID #: 1650
Case 1:13-cv-02058-RGA   Document 69   Filed 02/20/15   Page 1 of 14 PageID #: 1651

1

```
1                  UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF DELAWARE

3       DRAGON INTELLECTUAL PROPERTY :   CA NO. 13-2058-RGA

4       LLC                          :   13-2061,13-2062

5                    Plaintiff,      :   13-2063,13-2064,

6                                    :   13-2065,13-2066,

7       v.                           :   13-2067,13-2068,

8                                    :   13-2069-RGA

9       APPLE INC., et al            :   February 18, 2015

10                                   :

11                   Defendants,     :   2:01 O'clock p.m.

12      .............................:

13

14

15

16

17                 TRANSCRIPT OF DISCOVERY DISPUTE

18            BEFORE THE HONORABLE RICHARD G. ANDREWS

19                  UNITED STATES DISTRICT JUDGE

20

21

22      APPEARANCES:

23

24      For Plaintiff:      BAYARD, P.A.

25                          BY:  STEPHEN B. BRAUERMAN, ESQ
```

```
 1                              -and-

 2                    FREITAS ANGELL & WEINBERG, ESQ

 3                    BY:  JESSICA N. LEAL, ESQ

 4

 5

 6    For Defendants:   MORRIS, NICHOLS, ARSHT & TUNNELL

 7                    BY:  RODGER D. SMITH, II, ESQ

 8                    For Defendants Dish & AT&T

 9

10                    POTTER, ANDERSON & CORROON

11                    BY:  DAVID E. MOORE, ESQ

12                              -and-

13                    BOIES, SCHILLER & FLEXNER

14                    BY:  MICHAEL D. JAY, ESQ

15                    For Defendant Apple

16

17                    MORRIS, NICHOLS, ARSHT & TUNNELL

18                    BY:  ETHAN H. TOWNSEND, ESQ

19                    For Defendants Comcast, Cox, Charter,

20                    Verizon & Timer Warner Cable

21

22                    POTTER, ANDERSON & CORROON

23                    BY:  PHILIP A. ROVNER, ESQ

24                    For Defendant Sirius XM

25
```

```
 1                      ASHBY & GEDDES

 2                      BY:  ANDREW C. MAYO, ESQ

 3                              -and-

 4                      AKIN GUMP STRAUSS HAUER & FELD

 5                      BY:  JOHN WITTENZELLNER, ESQ

 6                      For Defendant Direct

 7

 8                      RICHARDS, LAYTON & FINGER

 9                      BY:  KELLY E. FARNAN, ESQ

10                      For Defendant Time Warner Cable

11

12

13

14

15

16

17

18

19   Court Reporter:         LEONARD A. DIBBS

20                           Official Court Reporter

21

22

23

24

25
```

Case 1:18-cv-00850-MN-CJB Document 51-1 Filed 08/07/19 Page 5 of 93 PageID #: 1653
Case 1:13-cv-02058-RGA Document 69 Filed 02/20/15 Page 4 of 14 PageID #: 1654

4

```
 1                    P R O C E E D I N G S

 2

 3            THE COURT:  All right.  Please be seated.

 4            So this is a discovery conference in Dragon

 5   Intellectual Property LLC vs. Apple, number 13-2058 plus about

 6   eight or nine other cases.

 7            You might as well as tell me who's here and then we can

 8   address the issues.

 9            Who represents the plaintiff here, Mr. Brauerman?

10            MR. BRAUERMAN:  Good afternoon, your Honor.

11            Steve Brauerman from Bayard.  I am joined at counsel

12   table with Jessica Leal from Freitas, Angell & Weinberg.

13            With your Honor's permission, she'll address the Court

14   today.

15            THE COURT:  Good afternoon.  Welcome.

16            All right.  For the defendants?

17            MR. MAYO:  Good afternoon, your Honor.  Andrew Mayo

18   from Ashby & Geddes for Direct TV.

19            I'm joined by my co-counsel from Akin Gump, John

20   Wittenzellner.

21            MS. FARNAN:  Good afternoon, your Honor.  Kelly Farnan

22   from Richards, Layton and Finger for Time Warner Cable.

23            MR. ROVNER:  Good afternoon, your Honor.  Phil Rovner

24   from Potter, Anderson & Corroon for Sirius XM.

25            MR. TOWNSEND:  Good afternoon, your Honor.  Ethan
```

Case 1:18-cv-00850-MN-CJB   Document 51-1   Filed 08/07/19   Page 6 of 93 PageID #: 1654
Case 1:13-cv-02058-RGA   Document 69   Filed 02/20/15   Page 5 of 14 PageID #: 1655

5

1    Townsend from Morris Nichols on behalf of Comcast, Charter, Cox,

2    Verizon & Time Warner.

3        MR. SMITH:  Good afternoon, your Honor.  Rodger Smith

4    from Morris Nichols on behalf of AT&T and Dish Network.

5        MR. MOORE:  Good afternoon, your Honor.  Dave Moore

6    from Potter, Anderson & Corroon on behalf of Apple.  With me

7    today is Mike Jay from Boies Schiller.

8        THE COURT:  All right.

9        Mr. Jay, correct?

10        MR. JAY:  Correct.

11        THE COURT:  Okay.  All right.  So, this is your

12    request, Mr. Jay.  I have read the letters.

13        I have a pretty good idea of what I want to do, but

14    tell me your view of the thing is, anything that you want me to

15    take into account right now.

16        MR. JAY:  Sure.  Sort of in reading the letters, what

17    may not be clear, all we're asking for is for them to go through

18    about 40 references, it's not 60 plus references.

19        In our contentions, we ever chartered about 40

20    references and go through not provide, you know, some 30 page

21    summary of each reference.

22        What we want -- what we are asking them is for them to

23    go through and just identify what limitations they think a

24    particular reference doesn't disclose and why they think it

25    doesn't disclose that.

Case 1:18-cv-00850-MN-CJB   Document 51-1   Filed 09/27/19   Page 7 of 93 PageID #: 1655
Case 1:13-cv-02058-RGA   Document 69   Filed 02/20/15   Page 6 of 14 PageID #: 1656

6

1            They argue in their letter, that doesn't have any value

2      to us.  We disagree with that.

3            First of all, it will help us to pare back references.

4      As we get further along in the case and we get to trial,

5      obviously we're not going to go forward on 40 references.  This

6      will, you know, certainly inform that decision.

7            In addition to that, often times issues of invalidity

8      are interrelated with non-infringement.

9            So, positions they take on prior art can certainly

10     affect our non-infringement arguments as well.

11           So, we think there's value in that.  And basically,

12     what we're asking them to do now is no different than what they

13     asked of us.

14           They argue in their letter that, well, this is

15     different because each defendant knows how their products work.

16           Well, Apple, for instance, has 80,000 employees.  Yes,

17     there are some people there who know how the products work, but

18     to respond to a non-infringement interrogatory, those engineers

19     who know how the products work aren't going to be responding to

20     that interrogatory.

21           THE COURT:  Just a for instance.  What was one Apple

22     accused product?

23           MR. JAY:  IPad Nano.

24           THE COURT:  I know what that is.

25           How many accused products were there?

Case 1:18-cv-00850-MN-CJB Document 51-1 Filed 09/27/19 Page 8 of 93 PageID #: 1656
Case 1:13-cv-02058-RGA Document 69 Filed 02/20/15 Page 7 of 14 PageID #: 1657

7

1     MR. JAY:  For Apple there's three.  Across all the

2     defendants, at least 150, if not more.

3          THE COURT:  Okay.

4     MR. JAY:  Basically, what that involves is outside

5     counsel speaking with engineers, reviewing documents, reviewing

6     source codes and then formulating a non-infringement argument

7     and then, you know, drafting the response to the interrogatory.

8          That's no different than what we're asking of them

9     here.  They have the prior art references.  They can review

10    those references and supply us with the information that we're

11    asking for.

12         So, I don't see any difference between the burden that

13    we're asking from them versus what they asked for from us as a

14    collective group.

15         THE COURT:  All right.

16         Is it Ms. Leal?

17         MS. LEAL:  Yes, your Honor.

18         I think the point of the 44 references and our

19    understanding of there being more kind of highlights the

20    burdensome issues here being we've looked at their contentions

21    and we couldn't figure out how they came up with the 44, because

22    while they each -- there are two separate groups, five

23    defendants, five a piece have submitted separate invalidity

24    contentions.

25         They each have 38 charts, yet their cover pleadings

Case 1:18-cv-00850-MN-CJB   Document 51-1   Filed 08/07/19   Page 9 of 93 PageID #: 1657
Case 1:13-cv-02058-RGA   Document 69   Filed 02/20/15   Page 9 of 14 PageID #: 1658

8

1    cite numerous other references, which suggests that they also

2    are anticipation of a 102 argument.

3         So when I was going through all these charts trying to

4    come up with a 44 number, I couldn't figure it out.

5         I couldn't figure out if 62 was the right number.  It

6    seemed that there could even be more than the 62.  I think that

7    compounds the problem of what this interrogatory seeks is that

8    this was their preliminary invalidity contentions.

9         So they're putting out everything they possibly found.

10   Some of it not charted, others vaguely charted such that, at

11   this point it seems that they're asking us to do their work for

12   them.

13        And they're asking us to do the work that we think a

14   person of ordinary skill in the art is required to analyze a lot

15   of this.

16        For us to do this -- they served them on October 28.

17   They asked us a few weeks later to do this when they know we're

18   going to be responding with expert testimony on September 16th.

19        In the middle, they are also going to be knowing our

20   position on a few of these.  Dish has brought an IPR that we're

21   working in that parallel as well.

22        So they're going to know our position on at least what

23   appears to be what they believe are the strongest pieces of

24   prior art that they have brought forward at the Patent Office.

25   And while they're still trying to develop their expert report,

Case 1:18-cv-00850-MN-CJR   Document 54-1   Filed 02/07/19   Page 10 of 93 PageID #: 1658
Case 1:13-cv-02058-RGA   Document 69   Filed 02/20/15   Page 9 of 14 PageID #: 1659

9

1    which I believe is due August 3rd, their list is going to be

2    narrowed.  It's going to be fixed.  It's going to be cleaned up

3    and it is going to be focused.

4         I also.  I just think that -- while we've been given

5    for us to try and interpret their preliminary invalidity

6    contentions, and our responses -- actually responding in a

7    detailed manner would take so much time and produce such little

8    value, because it's all going to be changed once the experts

9    start opining on this.

10        THE COURT:  Well, that assumes that the experts are

11   allowed to opine something different than the parties opine,

12   right?

13        MS. LEAL:  Correct.

14        Dish, when they submitted two of the references that

15   are also included that in their preliminary invalidity

16   contentions.  They actually submitted expert reports with those

17   positions.  So it wasn't just a attorney saying this is what I

18   think.  It's a person of ordinary skill in the art articulating

19   why the prior art anticipates.

20        THE COURT:  All right.

21        Anything to say?

22        MR. JAY:  Yes, sir.

23        As far as determining which references we're talking

24   about, I would be happy to provide opposing counsel with a list.

25        We did submit two separate sets of invalidity

Case 1:18-cv-00850-MN-CJB   Document 51-1   Filed 08/07/19   Page 11 of 93 PageID #: 1659
Case 1:13-cv-02058-RGA   Document 69   Filed 02/20/15   Page 10 of 14 PageID #: 1660

10

1    contentions.  Most of the references cross over.

2              Apple and many of the other defendants submitted

3    invalidity contentions were we provided 38 charts.  A couple of

4    those charts include multiple references.  So that is what gets

5    us to 44.  I would be happy to provide a list.

6              Also, when we met and conferred, it was sometime ago,

7    we offered to -- we spoke to Ms. Leal's colleague, Jason Angell,

8    you know, we offered, if you need more time, we're happy to give

9    you more time.

10             You know, we served this interrogatory many, many

11   months ago.  They had served their non-infringement

12   interrogatory a couple of days before that.  We all responded

13   within 30 days.  We're happy to give them more time.  If they

14   need another 30 days, 60 days, we're willing to be

15   accommodating.

16             THE COURT:  Okay.

17             So here's what I think:  I don't know how many prior

18   art references there are whether it's 40 or 44, 60 or 62, but

19   that's too many.

20             So I'm not going to order Dragon to chart or --

21   actually I guess chart is not the right word, respond to your

22   interrogatory on the number of prior art references as you all

23   are asserting right now.

24             However, if you get it down to a reasonable number.

25   I'm thinking a reasonable number is 15.  I think then it's fair

1    to have them respond.  I do think it will narrow the issues.

2         I think it will help in the claim construction, which I

3    don't think is done yet.  And I do think -- I think finding out

4    what the invalidity -- what the theories of the plaintiff are as

5    to why your invalidity references are -- why the prior art

6    doesn't anticipate in the expert reports.  Sometimes that's the

7    way it's done.  I think it's better to get it done earlier.

8         So I've heard Apple say, you know, I heard them say 30

9    or 60 days.

10        So, if you want to get a answer to this interrogatory,

11   you know, write down the 15 prior art references so Ms. Leal

12   will have no doubt as to which ones you're actually asserting,

13   and consider the rest dropped.  You can have 30 days to respond,

14   okay?

15        MS LEAL:  Your Honor, question can I ask?

16        Two of the references, we actually are going to be

17   responding to an IPR.  We have a patent numbers response due

18   date of May 4th.

19        THE COURT:  Well, I'm guessing that probably --

20   certainly for Dish, if they're doing it in the IP, they're not

21   going to be doing it in this case, right?

22        MS. LEAL:  Right.  The other defendants aren't going to

23   say they're estopped by that.

24        THE COURT:  In any event, it's up to the defendants to

25   pick whichever 15 we're talking about.

Case 1:18-cv-00850-MN-CJB   Document 51-1   Filed 08/05/19   Page 13 of 93 PageID #: 1261
Case 1:13-cv-02058-RGA   Document 69   Filed 02/20/15   Page 12 of 14 PageID #: 1662

12

1        There's ten of them sitting is around the table.  They

2   might have slightly different points of view.

3        I'm not saying it's the easiest thing in the world.  I

4   don't think it's something that Mr. Jay can just unilaterally

5   pick the 15 and everyone will say, what is good for Apple is

6   good for the country.

7        So if he wants to not include the two that Dish has

8   done, that's fine.  If he wants to include them, that's fine.

9        All right?

10       MR. LEAL:  Yes.

11       I guess if the date is going to be before that May 5th

12   and those two are included, then we would be supplementing our

13   response to their expert report.

14       THE COURT:  Wait.  Maybe I missed the pointed here.

15       Dish has asserted two of these in the IPR with an

16   expert opinion, and you have an IPR date of May 5th when you're

17   supposed to respond with your expert?

18       MR. JAY:  Actually, a different IPR.  It's the one

19   brought by Unified Patents.  Both Dish and Unified Patents in

20   two separate IPRs, have brought these same references?

21       THE COURT:  What is it you're asking for?

22       MS. LEAL:  If those two are among the list that they

23   want to respond, since the work is ongoing and we will be

24   submitting a final position on that.

25       THE COURT:  You know, it seems to me that if there are

1    two of them, I think May 5th is fine for those two, but do the

2    in 30 days.

3            MS. LEAL:  Okay.

4            THE COURT:  Okay.  All right.

5            MR. JAY:  Thank you.

6            MR. SMITH:  One point of clarification.  You said the

7    others would be dropped, you just meant for this interrogatory?

8            THE COURT:  No, they're gone.

9            If you want the answers -- asserting 44 or more

10   references for one patent is excessive.  And I say they're

11   dropped.  If it turns out that you've got an argument that

12   you've got cause to resurrect one or two of them later on

13   because of the strange and unexpected answers of Dragon, okay,

14   well, that's it, but otherwise, they're dropped.

15           MR. SMITH:  We're in the midst of claim construction

16   now.  The more typical time you would see a narrowing of

17   references would be post-claim construction as opposed to in

18   front of claim construction.

19           THE COURT:  Right.

20           If you want answers now, you need to narrow them now.

21   You don't have to, but if you want a answer, defendants can talk

22   about that among themselves.

23           I think 15 asserted references for one patent is a

24   reasonable number at this time.

25           And as Mr. Jay says as you get closer and closer to

1    then, that number will shrink.

2              I don't think the burdensome generally to answer this

3    sort of interrogatory.  You know, doing some number between 44

4    and 62, I think it's sufficiently burdensome, so I wouldn't

5    order it.

6              But if defendants are willing to meet the plaintiff

7    halfway, my definition of halfway, then I think it's fair to get

8    an answer, okay?

9              MR. SMITH:  Yes.

10             THE COURT:  All right.  Anything else?

11             MS. LEAL:  No, your Honor.

12             MR. JAY:  I have none, your Honor.

13             THE COURT:  Well, thank you very much.

14             (At this time the discovery conference concluded.)

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 2

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

SATIUS HOLDING, INC.,      :
                           :  C.A. No. 18-cv-0850-MN-CJB
      Plaintiff,           :
                           :
   v.                      :
                           :
SAMSUNG ELECTRONICS CO.    :
LTD., et al.,              :
      Defendants.          :

         Monday, December 3, 2018
         3:00 p.m.

         Case Management Conference
         Chambers of Judge Christopher J. Burke

         844 King Street
         Wilmington, Delaware

BEFORE:   THE HONORABLE Christopher J. Burke,
          United States District Court Magistrate

APPEARANCES:

      POTTER ANDERSON & CORROON, LLP
      BY:  ALAN SILVERSTEIN, ESQ.

            -and-

      KRAMER LEVIN NAFTALIS & FRANKEL LLP
      BY:  SHANNON HEDVAT, ESQ.

         On behalf of Plaintiff

2

1   APPEARANCES CONTINUED:

2

3        YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
4        BY:  PILAR KRAMAN, ESQ.

5              -and-

6        COVINGTON & BURLEY LLP
7        BY:  RICHARD RAINEY, ESQ.
8        BY:  PATRICK FLYNN, ESQ.

9           On behalf of Defendants

3

1        THE COURT:  We'll go on the record

2   and as we do, let me just say a few things for

3   the record.  The first is that we're here today

4   for a case management conference here in

5   chambers in the matter of Satius Holding, Inc.

6   v. Samsung Electronics Co. Ltd., et al.  This is

7   Civil Action No. 18-850-MN-CJB here in our

8   court.

9        And because we're here on the

10  record, I have with us a court reporter from the

11  Hawkins Reporting Service who will be taking

12  down our call today.  Before we go further, let

13  me have counsel for each side identify

14  themselves for the record.  And we'll start

15  first for the Plaintiff's side and we'll begin

16  there with Delaware counsel.

17       MR. SILVERSTEIN:  Good afternoon,

18  Your Honor.  Alan Silverstein from Potter

19  Anderson & Corroon for Satius Holding.  With me

20  today is Shannon Hedvat from Kramer Levin law

21  firm.

22       THE COURT:  Welcome and thank you.

23  And we'll do the same for counsel on the

24  Defendants' side and again we will begin with

4

1   Delaware counsel.

2        MS. KRAMAN:  Good afternoon, Your

3   Honor.  Pilar Kraman from Young Conaway for

4   Samsung.  And with me at counsel table is

5   Richard Rainey and Patrick Flynn from Covington.

6        THE COURT:  Welcome to all of you

7   and thank you.  Counsel, let me just start by

8   going over a couple of things that kind of fall

9   under the category of procedural issues and then

10  we can talk substance as well.  The first is

11  just to reiterate a bit about my role in the

12  case.

13       The case has been assigned to

14  Judge Noreika and she referred it to me to

15  handle and resolve all disputes up to and

16  including expert discovery so that's what I'll

17  do, and I'll be responsible for addressing

18  issues or motions that get raised in the first

19  instance up through the close of the expert

20  discovery period with Judge Noreika obviously

21  taking things from there through to trial.

22       One thing that we'll talk about in

23  a bit, I know the parties have provided a

24  proposed case schedule here and obviously they

5

1   did that at a point in which the case had
2   previously been assigned to Chief Judge Stark
3   and I had asked them to provide me with a copy
4   of the case schedule with his proposed
5   scheduling order.
6          Now, that the case has been
7   reassigned to Judge Noreika, I'm going to ask
8   the parties to do an additional step
9   administratively to take into account the new
10  state of our referral and, that is, to resubmit
11  the proposed scheduling order by no later than
12  close of business on Friday of this week.  It
13  will include the dates that I'm going to give
14  you in a second, some key dates that we need to
15  get from the Court's calendar.
16         I will also ask that the substance
17  of it be altered in the following way:  For the
18  parts of the scheduling order up to and
19  including expert discovery, you utilize my form
20  scheduling order for patent cases and then for
21  the parts of the scheduling order after expert
22  discovery and through trial, that you utilize
23  Judge Noreika's form scheduling order in patent
24  non-ANDA cases.  It will be very similar to what

6

1   Chief Judge Stark's form scheduling order
2   requires.  There's a few differences, for
3   example, the discovery process, obviously the
4   letter will be addressed to me and not Judge
5   Stark.  I allow for some additional time for the
6   parties for briefing.  The claim construction
7   briefing is a little different but not crazily
8   different, so it shouldn't be hard.
9          I think almost all of the dates
10  are going to be the same kind of dates you've
11  already agreed on.  There may be a few new dates
12  that you have to add something in for, but I
13  expect it to be pretty easy.  So I'll ask the
14  Plaintiff to submit on behalf of all parties a
15  revised proposed scheduling order by close of
16  business on Friday of this week that comports
17  with that.
18         Let me also give you a couple of
19  key dates with regard to the schedule that we
20  were able to pull from my calendar or Judge
21  Noreika's calendar.  The first will be the
22  Markman hearing which I will be responsible for,
23  and that's going to be held on October 30, 2019
24  at 11 o'clock a.m.  That's October 30, 2019 at

7

1   11:00 a.m.
2          Judge Noreika you will see in her
3   form scheduling order unlike Chief Judge Stark
4   does not set a default date for a hearing on
5   case dispositive and Daubert motions so we won't
6   be putting in a date on the schedule for that.
7   If the judge determines after reviewing the case
8   dispositive and Daubert motions that are filed
9   that she wants to have a hearing, she'll reach
10  out to the parties, but that's her preference so
11  I have no date for you there.
12         The pretrial conference will be
13  held on November 24, 2020 at 3 o'clock p.m.
14  That's November 24, 2020 at 3 o'clock p.m., and
15  the jury trial will begin on December 7, 2020 at
16  9:30 a.m.  That's December 7, 2020 at 9:30 a.m.
17         On that front I note that the
18  parties have requested five days be allocated
19  for the trial and we're going to reserve five
20  days on Judge Noreika's calendar.  I always note
21  that the judge obviously retains the discretion
22  when she provides the parties with the set
23  number of hours for the trial presentations to
24  determine that a certain number of hours that

8

1   might be slightly more or slightly less than
2   what would amount to five days of trial time
3   makes sense in the case.  Obviously, nothing
4   that I'm doing here today takes that discretion
5   away from her.  But in any event, we're
6   reserving five days on her calendar for the
7   trial.
8          I know the parties have one
9   substantive dispute about the schedule which I
10  will ask them to provide any further arguments
11  they wish to in just a moment.  Let me just say
12  one or two other things by way of process and,
13  that is, it's just kind of something I always
14  note at the case management conference and, that
15  is, that I've entered a standard order that's
16  found on my portion of the District Court's
17  website that relates to providing newer
18  attorneys with opportunities to argue motions in
19  front of me.
20         Basically, what the standing order
21  just says is that if there's a motion that's
22  pending in front of me and a side is requesting
23  oral argument, if the side indicates that a
24  newer attorney, that is, an attorney seven years

9

1  or less out of law school is going to argue the
2  motion, then I will almost certainly grant oral
3  argument.  I'll consider doing other things
4  which is meant to encourage parties to allow
5  attorneys to argue like allocating more time
6  than I otherwise might have for the argument in
7  that case.  So I just commend the parties to
8  that standing order which again is on my portion
9  of the court's website.
10         As I said, I think there was just
11 one substantive dispute in the schedule and I
12 think it came on Page 6 in Footnote 1 of the
13 scheduling order that the parties proposed and
14 this is really just to do about the reality that
15 while the parties have agreed that there should
16 be opening and rebuttal expert report in the
17 main, what to do about secondary considerations
18 and how to deal with that.
19         I'm happy to have the parties
20 provide me briefly with a little bit about
21 what's behind their position and then I can make
22 a decision.  So I'll turn to counsel for
23 Plaintiff's side and then we will hear from
24 counsel for Defendants' side as well.

10

1          MS. HEDVAT:  Thank you, Your
2  Honor.  Shannon Hedvat from Kramer Levin.  Our
3  position is as we've laid out in the scheduling
4  order that invalidity is an issue on which the
5  Defendants have the burden.  The parties agreed
6  during the meet-and-confer for the scheduling
7  order that we would do opening reports and
8  rebuttal report and then it was raised that
9  secondary considerations is an issue that
10 although tied to obviousness, it's Defendants'
11 position that the Plaintiff should have to
12 reveal that information upfront before they
13 should have an opportunity to rebut it.
14         It is Satius' position that it
15 falls strictly under obviousness which is the
16 burden of the Defendant and, in fact, the WMS
17 Gaming case that Defendants rely upon out of the
18 Federal Circuit makes clear on the purpose of
19 secondary considerations which is to rebut a
20 case of obviousness.
21         So what Defendants are ultimately
22 asking for now in their proposal is that they
23 have an opportunity to have two bites of the
24 apple on invalidity to see our rebuttal position

11

1  on secondary considerations, then to be able to
2  submit an additional expert report on that.  And
3  it's our position that the proposal that we've
4  laid out should be adopted.
5          THE COURT:  I will ask them in
6  just a second, but my read was that what the
7  Defendants were proposing was that of course
8  they would go first on validity with their
9  initial expert report, but as to the issue of
10 secondary considerations, that report would
11 include any material that would be waiting for
12 you to raise it by way of your burden of
13 production in the responsive expert report.
14         It seemed like what they were
15 saying is so then let us on just that issue
16 provide a reply because if we didn't, we would
17 have this one piece of the whole puzzle where
18 there's no responsive expert report and that's
19 not a good thing.
20         If that's what they're proposing,
21 and I will ask them in a second, wouldn't it be
22 a bad thing to have what can be a pretty
23 important piece of the validity puzzle not
24 responded to when it comes to the expert report

12

1  process whereas everything else is going to be
2  responded to?
3          MS. HEDVAT:  Your Honor, I believe
4  that secondary considerations like in the other
5  piece of rebuttal evidence would undoubtedly be
6  left in the rebuttal report.  It's like anything
7  else that they may present in their
8  noninfringement positions in rebuttal to our
9  infringement case.  Secondary considerations are
10 simply a piece of rebuttal evidence to
11 obviousness if it is raised in opening reports.
12         THE COURT:  Is it your view then
13 in your world you will say what you will say in
14 the rebuttal report with regard to secondary
15 considerations.  If they want to front anything
16 in their opening report on validity about that
17 issue, they can.  But if they don't, you will
18 have a word on it when it comes to rebuttal
19 reports and that will be where things get left,
20 at the expert report stage?
21         MS. HEDVAT:  Correct, in the same
22 way that on their noninfringement positions
23 would be the same in their rebuttal reports.
24         THE COURT:  All right.  I think I

13

1 understand the Plaintiff's side.  Let me turn to
2 Defendants' side.  First, I should ask
3 Defendants' counsel if I was reading their
4 proposal right when it comes to the issue of
5 secondary considerations, they wouldn't say
6 anything about it in their opening report on
7 invalidity.  To the extent the issue was raised
8 by the Plaintiff in the rebuttal report, then
9 only as to that issue would there be a reply
10 report and rebutted defense?
11         MR. RAINEY:  Yes, that is our
12 view.  Just logically, it seems to flow that
13 way.  It's consistent with the burden of
14 production that the Federal Circuit seems to put
15 on this issue and it makes sense.
16         We have the burden obviously of
17 persuasion.  Nobody is arguing that on
18 invalidity, but it's not our patent.  And we
19 don't necessarily know what they're going to say
20 when it comes to secondary indicia.
21         I would fully expect assuming
22 obviousness is in the case at that time we would
23 have an obviousness position in our topside
24 report which they would respond to and included

14

1 in that response would be, hey, there's this
2 piece of secondary indicia, there's that piece
3 of secondary indicia.
4         We would want to have an
5 opportunity to respond to that in a narrow
6 rebuttal report.  I think that makes sense and
7 would be strange not to have a piece of the case
8 where they know what our position is on the
9 issue.
10         THE COURT:  If I adopted your
11 position, it's not the case that you're
12 anticipating that in your opening report on
13 validity you will in some way attempt to
14 anticipate what the other side would be saying
15 about secondary considerations, say something
16 then and something in the reply report.  It
17 would be what you've just described?
18         MR. RAINEY:  That's correct.  And
19 we're not attempting to play a game here.  We're
20 just trying to do a logical presentation of the
21 evidence.  But that's exactly correct, that's
22 our position.  We will not say anything about
23 the issue in our topside report.  We'll wait to
24 see what they say in response.  We'll provide a

15

1 rebuttal report on that issue only.
2         THE COURT:  Okay.  In light of
3 what I've heard, I'm going to ultimately adopt
4 the Defendants' position here.  It's certainly
5 the case that the Defendant has the burden on
6 invalidity but as the parties have noted, it's
7 the Plaintiff who bears the burden of production
8 with regard to secondary considerations.
9         It makes sense to me if there's
10 going to be a first point in which that is
11 raised, that it be raised by the Plaintiff in
12 their rebuttal report.  It also makes sense to
13 me it's not a good thing to have a key piece of
14 the case on invalidity/validity not addressed in
15 the expert report process.  So I think it makes
16 sense to make an exception here and allow a
17 reply report solely on the issue of secondary
18 considerations to be submitted by the
19 Plaintiffs.
20         When the parties provide me with
21 their new proposed schedule, there obviously
22 will be a portion related to the expert reports
23 and language akin to the Defendants' position
24 can be inserted there.  And I commend the

16

1 parties and appreciate that the parties
2 otherwise were able to work through the
3 scheduling-related issues without further
4 dispute, which trust me, I don't see all of the
5 time.
6         I also in addition to talking
7 about scheduling-related disputes, I always give
8 each side the opportunity to tell me here at the
9 case management conference about any issue,
10 although it doesn't relate to a scheduling
11 dispute, that is something along the lines of,
12 Judge, this is an issue that's important in the
13 case.  It's likely to be one that you're going
14 to see pop up.  We just want to give you a
15 heads-up here at the beginning, that it's
16 something that's important to our side or
17 something that is likely to take some time and
18 resources from the Court.
19         Not that the sides have to have
20 such an issue, but if they do, I always give
21 each side an opportunity to let me know.  And I
22 will turn first to counsel for the Plaintiff's
23 side.
24         MS. HEDVAT:  Thank you, Your

17

1 Honor.  I would say the only primary issue we
2 could anticipate may arise is with respect to
3 the core technical production as outlined in our
4 letter submission to the Court.  During the
5 meet-and-confer process, Defendants sought for
6 us to limit or specifically identify the
7 products that we believe should be subject to
8 the core technical production and to identify
9 the products that will be the scope of what's
10 accused in this case.
11         It's our position that until
12 discovery is underway we can not be restricted
13 in any manner and that we have laid out in the
14 scheduling order the identification of the
15 accused products for which we expect the full
16 core technical document production and then a
17 year of discovery and then our final
18 identification is next December of 2019, so the
19 main issue we hope will not be at issue but
20 maybe is whether the scope of the core technical
21 production will be up to what we expect and are
22 entitled to.
23         THE COURT:  Certainly, the
24 Plaintiffs are entitled to core technical

18

1 documents, whatever that amounts to for these
2 products.  It sounds like the Defendants were
3 anticipating some dispute about whether the core
4 technical document production needs to go beyond
5 what they term documents relating to impedance
6 tuner functionality.
7         I don't have a lot of information
8 before me about that issue.  But to the extent
9 it seems like they're trying to head off further
10 disputes later, is there anything the Plaintiff
11 wants to say about what you think this dispute
12 might really be about and what might come up
13 later between the parties based on what you
14 understand now?
15         MS. HEDVAT:  It's hard to know
16 because we don't know the type of documents that
17 Defendants maintain with respect to technical
18 functionalities of the accused products.
19 Clearly, we've identified in the Complaint what
20 are the accused functionalities and we will be
21 providing in a couple of weeks the
22 identification of the accused products, so we
23 would expect that at a minimum the core
24 technical document production should pertain to

19

1 specifications and other documents relating to
2 those functionalities we've identified.
3         THE COURT:  Okay.  Let me turn to
4 counsel for Defendants' side and see if there's
5 anything they want to add about this issue.
6         MR. RAINEY:  We do, Judge.  I know
7 the Court is familiar with this where we have a
8 situation Samsung Electronics that has
9 thousands, if not tens of thousands of
10 electronics products which have communication
11 functionality of varying degrees, so it can
12 simply be that we're going to be searching for
13 documents having to do with communication about
14 all of our products.
15         So one of the things that
16 concerned us is what we perceive to be the
17 shifting scope of this case.  The Complaint in
18 this case identifies three chips, if you will,
19 that have these alleged impedance tuners in
20 them, two Shannon chips and a Qualcomm chip.
21 There are two issues that flow from that.
22         One is what is the scope of if
23 it's impedance tuner and that's the issues we're
24 going to be searching for.  That may be one

20

1 issue.  If it's no communication vehicle
2 whatsoever no matter what it happens to have in
3 it, that's going to be a dispute that we
4 certainly will be before Your Honor on.
5         I think the scope of what the --
6 and this Court is well familiar with what is the
7 accused functionality here as one issue.  The
8 second issue relates to the Shannon chips.
9 Those are chips that as I understand it are made
10 solely for products that are produced and sold
11 outside of the United States.
12         Obviously, Samsung is a Korean
13 based company and they have products that are
14 solely for outside the U.S. market, and the
15 Shannon chip is such a product.  So one of the
16 other issues that we've attempted to tee up is
17 are they going to be seeking production of
18 documents related to products solely made for
19 the outside U.S. market.  And if that is the
20 case, we're going to have a second dispute I'm
21 almost certain we're going to be raising before
22 Your Honor.
23         THE COURT:  On the first issue, it
24 could be that there's one or the other or both

21

1  of the following issues that you're
2  highlighting.  It sounds like in part what
3  you're wondering is when it comes to the accused
4  functionalities, what am I looking for to help
5  me determine whether beyond the specifically
6  identified accused products whether the
7  Plaintiff is also asserting, look, if there are
8  products that are substantially similar, we're
9  also going to be accusing them.
10         MR. RAINEY:  Right.
11         THE COURT:  Then secondly, it also
12  sounds like it might also be a dispute along the
13  lines of and even as to the products that we
14  know are being specifically identified, there's
15  a lot of potential documentation out there as to
16  those products that relate to how they work.
17  We're trying to hone in on what is going to be
18  the core technical documents as to those.  Are
19  those both issues that are kind of in your mind?
20         MR. RAINEY:  For sure.
21         THE COURT:  And to Plaintiff's
22  counsel as to the second issue, the question
23  being to the extent that we have accused
24  products that may use chips and are solely

22

1  extraterritorially outside the U.S., are those
2  going to be potentially at issue in the case?
3  And Judge Stark has a decision recently that
4  relates to this issue.
5         I have not addressed it previously
6  so if it comes up, it will be the first time for
7  me.  But is that going to be a dispute as far as
8  you know in the case?
9         MS. HEDVAT:  The short answer,
10  Your Honor, is it could be.  Until we have
11  discovery on these chips and functionalities
12  that they are claiming are solely related to
13  products outside of the U.S., it's hard for us
14  to anticipate and know whether the international
15  sales could be subject to damages and other
16  aspects of the litigation, but it's our position
17  that we shouldn't be foreclosed from that
18  discovery at this juncture so early on.
19         THE COURT:  Well, the guidance I
20  can give you at this stage is pretty limited.
21  Obviously, it's helpful when we know that there
22  are going to likely be disputes between the
23  parties about the initial two stages,
24  particularly the second stage of the disclosures

23

1  process, it's helpful to have as much
2  communication as possible between the sides to
3  try to head off potential disputes before they
4  materialize to discovery disputes before the
5  Court.
6         It sounds like you have made some
7  attempts in that regard already.  I certainly
8  encourage the parties to continue to talk to see
9  if they can reach some agreement as to those
10  issues.  To the extent you can and to the extent
11  you're aware that there are disputes, obviously
12  the parties can raise those with the Court
13  pursuant to the court's discovery dispute
14  procedures that are in the scheduling order that
15  you're going to submit.
16         Sometimes it's the case that
17  there's a deadline for core technical document
18  production and it's just not the ability to get
19  that dispute teed up before that deadline hits.
20  If that happens, then obviously the party who's
21  making that production should do its best in
22  what it considers to be a full and fair
23  production of core technical documents.  And if
24  it believes in that span is excluded something

24

1  that the Plaintiff knows should be included, we
2  will tee that up as soon as we can when we go
3  through the court discovery dispute procedures.
4         I think that issues that the
5  parties raised today are ones that if they can't
6  be resolved are going to be fit for resolution
7  in those procedures, so I will deal with those
8  as they arise.
9         Okay.  Were there any other issues
10  that the Plaintiff wished to raise at this time?
11         MS. HEDVAT:  No, Your Honor.
12  Thank you.
13         THE COURT:  And on the Defendants'
14  side, Mr. Rainey, anything that we haven't
15  talked about that the Defendants wanted to raise
16  or highlight?
17         MR. RAINEY:  The only other issue
18  I think, Judge, that might be worth just
19  discussing briefly is the issue of emails.  I
20  think this is teed up somewhere in the papers we
21  submitted.  This is, at least as the Complaint
22  is packaged right now, is a direct infringement.
23  There's no allegations of willful infringement.
24  There's no allegations of induced infringement.

25

1  We have the added issue in this
2  case of a huge imbalance between the Plaintiff
3  and the Defendant in terms of size and
4  complexity of what information is sitting in the
5  trove of discoverable information out there.
6  And one of the issues we want to attempt to head
7  off early is this issue of email which is for
8  Samsung a very burdensome and difficult issue.
9  I think the approach thus far and
10  the discussions have been the default order says
11  10 custodians so we want 10 custodians.  That to
12  us is a totally unreasonable position,
13  particularly since there's been articulation of
14  how email is relevant in a case where there's
15  only direct infringement allegations.  We don't
16  have a willful infringement case.  Nobody is
17  talking about what state of mind of some
18  engineer at Samsung was.
19  And secondly, we have this huge
20  imbalance between the Plaintiff and the
21  Defendant in terms of what's going to be sought
22  here.  So given the burden on us, we just want
23  to raise this as an issue that I think may end
24  up coming up at some point before Your Honor.

26

1  THE COURT:  Okay.  Understood.
2  Anything Plaintiff's counsel wants to say in
3  response to this issue?
4  MS. HEDVAT:  It's the first that
5  we've heard about this from Defendant.  We're
6  happy to work with them to see if we can come to
7  an agreement on the scope of it.
8  THE COURT:  All right.  I
9  appreciate the parties raising that issue.  One
10  other thing I will note, I think it's come up a
11  little bit implicitly, if not explicitly, in
12  what we've discussed and I think in the letters
13  as well.
14  One of the most difficult, I
15  think, parts of the discovery process for me in
16  patent cases can be when we have disputes about
17  nonspecifically accused products and to what
18  extent such products are those that the
19  Plaintiff is entitled to discovery on and/or how
20  to make determinations about whether certain
21  products are representative of others.  It's
22  very difficult.  The case law isn't easy and
23  I've tried to work through it.
24  That's particularly an area I

27

1  suspect may be an issue here.  I'm not sure how
2  many accused products there will be at the
3  start.  We have an initial disclosures deadline
4  for the Plaintiff to identify the accused
5  products but that's an issue too, where based on
6  experience I particularly urge the parties to
7  have early discussions on it.
8  And to the extent that there are
9  disputes, to raise them timely with me because I
10  think they can be challenging to work through
11  from experience.  So I just note that as well.
12  Okay.  Let me just say one other
13  word about the issue of alternative dispute
14  resolution or ADR and, that is, it may not be me
15  who is the Magistrate Judge that will be
16  pursuing ADR in the case.  We've recently as the
17  parties may know kind of reorganized how our
18  Magistrate Judges are working with District
19  Judges.
20  And when it comes to the issue of
21  ADR, what will happen is that after the case
22  schedule gets entered in just a few days, the
23  schedule itself obviously has a provision in it
24  that indicates that a Magistrate Judge will be

28

1  assigned for ADR purposes.  When that happens,
2  Chief Judge Thynge will then ultimately assign a
3  Magistrate Judge to address ADR in the case.
4  And that judge, whoever it is,
5  will almost certainly set up an initial
6  teleconference with both sides in some number of
7  weeks thereafter to start to talk about the
8  issue of ADR and settlement to see when the best
9  point in the case schedule would be for that
10  judge to have an additional phone call and make
11  further efforts.
12  So just something for the parties
13  to keep in mind, soon enough either me or some
14  other Magistrate Judge will be asking when's the
15  first point in the case schedule that the
16  parties jointly think ADR by a Magistrate Judge
17  could be useful.  I'm just not sure that's going
18  to be me or not, and you will just have to stay
19  tuned for that.
20  With those things being addressed,
21  is there anything further that we need to take
22  up procedurally in our case management
23  conference from the Plaintiff's side?
24  MS. HEDVAT:  No.  Thank you, Your

29

1 Honor.
2              THE COURT:  And for the
3 Defendants' side?
4              MR. RAINEY:  Nothing from our end.
5              THE COURT:  Okay.  Good.  To our
6 out-of-town folks, I wish you safe travels and
7 we'll go off the record and end our case
8 management conference here today.
9              (The proceedings ended at
10 3:40 p.m.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24

30

1      C E R T I F I C A T I O N
2
3      I, Taneha Carroll, Professional
4 Court Reporter, certify that the foregoing is a
5 true and accurate transcript of the foregoing
6 proceeding.
7      I further certify that I am neither
8 attorney nor counsel for, nor related to nor
9 employed by any of the parties to the action in
10 which this proceeding was taken; further, that I am
11 not a relative or employee of any attorney or
12 counsel employed in this case, nor am I financially
13 interested in this action.
14
15
16      /s/Taneha Carroll
       Taneha Carroll
17
18      Professional Reporter and Notary Public
19
20
21
22
23
24

/s/taneha

chief

---

**/**

/s/taneha  (30:16)

**A**

**ability**  (23:18)
**able**  (6:20)(11:1)(16:2)
**account**  (5:9)
**accurate**  (30:4)
**accused**  (17:10)(17:15)(18:18)(18:20)(18:22)(20:7)
(21:3)(21:6)(21:23)(26:17)(27:2)(27:4)
**accusing**  (21:9)
**action**  (3:7)(30:9)(30:13)
**add**  (6:12)(19:5)
**added**  (25:1)
**addition**  (16:6)
**additional**  (5:8)(6:5)(11:2)(28:10)
**address**  (28:3)
**addressed**  (6:4)(15:14)(22:5)(28:20)
**addressing**  (4:17)
**administratively**  (5:9)
**adopt**  (15:3)
**adopted**  (11:4)(14:10)
**adr**  (27:14)(27:16)(27:21)(28:1)(28:3)(28:8)(28:16)
**after**  (5:21)(7:7)(27:21)
**afternoon**  (3:17)(4:2)
**again**  (3:24)(9:8)
**agreed**  (6:11)(9:15)(10:5)
**agreement**  (23:9)(26:7)
**akin**  (15:23)
**alan**  (1:18)(3:18)
**all**  (4:6)(4:15)(6:9)(6:14)(12:24)(16:4)(19:14)(26:8)
**allegations**  (24:23)(24:24)(25:15)
**alleged**  (19:19)
**allocated**  (7:18)
**allocating**  (9:5)
**allow**  (6:5)(9:4)(15:16)
**almost**  (6:9)(9:2)(20:21)(28:5)
**along**  (16:11)(21:12)
**already**  (6:11)(23:7)
**also**  (5:16)(6:18)(15:12)(16:6)(21:7)(21:9)(21:11)
(21:12)
**altered**  (5:17)
**alternative**  (27:13)
**although**  (10:10)(16:10)
**always**  (7:20)(8:13)(16:7)(16:20)
**amount**  (8:2)
**amounts**  (18:1)

---

**–**

**-and-**  (1:19)(2:4)

**A**

**and/or**  (26:19)
**anderson**  (1:18)(3:19)
**answer**  (22:9)
**anticipate**  (14:14)(17:2)(22:14)
**anticipating**  (14:12)(18:3)
**any**  (8:5)(8:10)(11:11)(16:9)(17:13)(24:9)(30:9)(30:11)
**anything**  (12:6)(12:15)(13:6)(14:22)(18:10)(19:5)
(24:14)(26:2)(28:21)
**appearances**  (1:16)(2:1)
**apple**  (10:24)
**appreciate**  (16:1)(26:9)
**approach**  (25:9)
**are**  (6:10)(7:8)(10:21)(12:9)(17:21)(17:24)(18:20)
(19:21)(20:9)(20:10)(20:13)(20:17)(21:7)(21:8)(21:14)
(21:18)(21:19)(21:24)(22:1)(22:12)(22:22)(23:11)
(23:14)(24:5)(24:6)(26:18)(26:21)(27:8)(27:18)
**area**  (26:24)
**argue**  (8:18)(9:1)(9:5)
**arguing**  (13:17)
**argument**  (8:23)(9:3)(9:6)
**arguments**  (8:10)

**arise**  (17:2)(24:8)
**articulation**  (25:13)
**ask**  (5:7)(5:16)(6:13)(8:10)(11:5)(11:21)(13:2)
**asked**  (5:3)
**asking**  (10:22)(28:14)
**aspects**  (22:16)
**asserting**  (21:7)
**assign**  (28:2)
**assigned**  (4:13)(5:2)(28:1)
**assuming**  (13:21)
**attempt**  (14:13)(25:6)
**attempted**  (20:16)
**attempting**  (14:19)
**attempts**  (23:7)
**attorney**  (8:24)(30:8)(30:11)
**attorneys**  (8:18)(9:5)
**aware**  (23:11)
**away**  (8:5)

---

**B**

**bad**  (11:22)
**based**  (18:13)(20:13)(27:5)
**basically**  (8:20)
**bears**  (15:7)
**because**  (3:9)(11:16)(18:16)(27:9)
**been**  (4:13)(5:2)(5:6)(25:10)(25:13)
**before**  (1:14)(3:12)(10:12)(18:8)(20:4)(20:21)(23:3)
(23:4)(23:19)(25:24)
**begin**  (3:15)(3:24)(7:15)
**beginning**  (16:15)
**behalf**  (1:22)(2:7)(6:14)
**behind**  (9:21)
**being**  (21:14)(21:23)(28:20)
**believe**  (12:3)(17:7)
**believes**  (23:24)
**best**  (23:21)(28:8)
**between**  (18:13)(22:22)(23:2)(25:2)(25:20)
**beyond**  (18:4)(21:5)
**bit**  (4:11)(4:23)(9:20)(26:11)
**bites**  (10:23)
**both**  (20:24)(21:19)(28:6)
**briefing**  (6:6)(6:7)
**briefly**  (9:20)(24:19)
**burden**  (10:5)(10:16)(11:12)(13:13)(13:16)(15:5)(15:7)
(25:22)
**burdensome**  (25:8)
**burke**  (1:11)(1:14)
**burley**  (2:5)
**business**  (5:12)(6:16)
**but**  (6:7)(6:12)(7:10)(8:5)(11:6)(11:9)(12:17)(13:18)
(14:21)(15:6)(16:20)(17:19)(18:8)(22:7)(22:16)(27:5)

---

**C**

**calendar**  (5:15)(6:20)(6:21)(7:20)(8:6)
**call**  (3:12)(28:10)
**came**  (9:12)
**can**  (4:10)(9:21)(11:22)(12:17)(15:24)(17:12)(19:11)
(22:20)(23:9)(23:10)(23:12)(24:2)(26:6)(26:16)(27:10)
**can't**  (24:7)
**carroll**  (30:2)(30:16)
**case**  (1:10)(3:4)(4:12)(4:13)(4:24)(5:1)(5:4)(5:6)
(7:5)(7:7)(8:3)(8:14)(9:7)(10:17)(10:20)(12:9)(13:22)
(14:7)(14:11)(15:5)(15:14)(16:9)(16:13)(17:10)(19:17)
(19:18)(20:20)(22:2)(22:8)(23:16)(25:2)(25:14)(25:16)
(26:22)(27:16)(27:21)(28:3)(28:9)(28:15)(28:22)(29:7)
(30:12)
**cases**  (5:20)(5:24)(26:16)
**category**  (4:9)
**certain**  (7:24)(20:21)(26:20)
**certainly**  (9:2)(15:4)(17:23)(20:4)(23:7)(28:5)
**certify**  (30:3)(30:7)
**challenging**  (27:10)
**chambers**  (1:11)(3:5)
**chief**  (5:2)(6:1)(7:3)(28:2)

| chip | few |
|---|---|

**chip** (19:20)(20:15)
**chips** (19:18)(19:20)(20:8)(20:9)(21:24)(22:11)
**christopher** (1:11)(1:14)
**circuit** (10:18)(13:14)
**civil** (3:7)
**claim** (6:6)
**claiming** (22:12)
**clear** (10:18)
**clearly** (18:19)
**close** (4:19)(5:12)(6:15)
**come** (18:12)(26:6)(26:10)
**comes** (11:24)(12:18)(13:4)(13:20)(21:3)(22:6)(27:20)
**coming** (25:24)
**commend** (9:7)(15:24)
**communication** (19:10)(19:13)(20:1)(23:2)
**company** (20:13)
**complaint** (18:19)(19:17)(24:21)
**complexity** (25:4)
**comports** (6:16)
**conaway** (2:2)(4:3)
**concerned** (19:16)
**conference** (1:10)(3:4)(7:12)(8:14)(16:9)(28:23)(29:8)
**consider** (9:3)
**considerations** (9:17)(10:9)(10:19)(11:1)(11:10)(12:4)(12:9)(12:15)(13:5)(14:15)(15:8)(15:18)
**considers** (23:22)
**consistent** (13:13)
**construction** (6:6)
**continue** (23:8)
**continued** (2:1)
**copy** (5:3)
**core** (17:3)(17:8)(17:16)(17:20)(17:24)(18:3)(18:23)(21:18)(23:17)(23:23)
**correct** (12:21)(14:18)(14:21)
**corroon** (1:18)(3:19)
**could** (17:2)(20:24)(22:10)(22:15)(28:17)
**counsel** (3:13)(3:16)(3:23)(4:1)(4:4)(4:7)(9:22)(9:24)(13:3)(16:22)(19:4)(21:22)(26:2)(30:8)(30:12)
**couple** (4:8)(6:18)(18:21)
**course** (11:7)
**court** (1:1)(1:14)(3:1)(3:8)(3:10)(3:22)(4:6)(11:5)(12:12)(12:24)(14:10)(15:2)(16:18)(17:4)(17:23)(19:3)(19:7)(20:6)(20:23)(21:11)(21:21)(22:19)(23:5)(23:12)(24:3)(24:13)(26:1)(26:8)(29:2)(29:5)(30:3)
**court's** (5:15)(8:16)(9:9)(23:13)
**covington** (2:5)(4:5)
**crazily** (6:7)
**custodians** (25:11)

| | D | |
|---|---|---|

**damages** (22:15)
**date** (7:4)(7:6)(7:11)
**dates** (5:13)(5:14)(6:9)(6:10)(6:11)(6:19)
**daubert** (7:5)(7:8)
**days** (7:18)(7:20)(8:2)(8:6)(27:22)
**deadline** (23:17)(23:19)(27:3)
**deal** (9:18)(24:7)
**december** (1:8)(7:15)(7:16)(17:18)
**decision** (9:22)(22:3)
**default** (7:4)(25:10)
**defendant** (10:16)(15:5)(25:3)(25:21)(26:5)
**defendants** (1:7)(2:7)(10:5)(10:17)(10:21)(11:7)(17:5)(18:2)(18:17)(24:15)
**defendants'** (3:24)(9:24)(10:10)(13:2)(13:3)(15:4)(15:23)(19:4)(24:13)(29:3)
**defense** (13:10)
**degrees** (19:11)
**delaware** (1:2)(1:12)(3:16)(4:1)
**described** (14:17)
**determinations** (26:20)
**determine** (7:24)(21:5)
**determines** (7:7)
**did** (5:1)
**didn't** (11:16)

**differences** (6:2)
**different** (6:7)(6:8)
**difficult** (25:8)(26:14)(26:22)
**direct** (24:22)(25:15)
**disclosures** (22:24)(27:3)
**discoverable** (25:5)
**discovery** (4:16)(4:20)(5:19)(5:22)(6:3)(17:12)(17:17)(22:11)(22:18)(23:4)(23:13)(24:3)(26:15)(26:19)
**discretion** (7:21)(8:4)
**discussed** (26:12)
**discussing** (24:19)
**discussions** (25:10)(27:7)
**dispositive** (7:5)(7:8)
**dispute** (8:9)(9:11)(16:4)(16:11)(18:3)(18:11)(20:3)(20:20)(21:12)(22:7)(23:13)(23:19)(24:3)(27:13)
**disputes** (14:5)(16:7)(18:10)(22:22)(23:3)(23:4)(23:11)(26:16)(27:9)
**district** (1:1)(1:2)(1:14)(8:16)(27:18)
**document** (17:16)(18:4)(18:24)(23:17)
**documentation** (21:15)
**documents** (18:1)(18:5)(18:16)(19:1)(19:13)(20:18)(21:18)(23:23)
**does** (7:4)
**doesn't** (16:10)
**doing** (8:4)(9:3)
**don't** (12:17)(13:19)(16:4)(18:7)(18:16)(25:15)
**down** (3:12)
**during** (10:6)(17:4)

| | E | |
|---|---|---|

**each** (3:13)(16:8)(16:21)
**early** (22:18)(25:7)(27:7)
**easy** (6:13)(26:22)
**efforts** (28:11)
**either** (28:13)
**electronics** (1:6)(3:6)(19:8)(19:10)
**else** (12:1)(12:7)
**email** (25:7)(25:14)
**emails** (24:19)
**employed** (30:9)(30:12)
**employee** (30:11)
**encourage** (9:4)(23:8)
**end** (25:23)(29:4)(29:7)
**ended** (29:9)
**engineer** (25:18)
**enough** (28:13)
**entered** (8:15)(27:22)
**entitled** (17:22)(17:24)(26:19)
**esq** (1:18)(1:21)(2:3)(2:5)(2:6)
**even** (21:13)
**event** (8:5)
**everything** (12:1)
**evidence** (12:5)(12:10)(14:21)
**exactly** (14:21)
**example** (6:3)
**exception** (15:16)
**excluded** (23:24)
**expect** (6:13)(13:21)(17:15)(17:21)(18:23)
**experience** (26:7)(27:11)
**expert** (4:16)(4:19)(5:19)(5:21)(9:16)(11:2)(11:9)(11:13)(11:18)(11:24)(12:20)(15:15)(15:22)
**explicitly** (26:11)
**extent** (13:7)(18:8)(21:23)(23:10)(26:18)(27:8)
**extraterritorially** (22:1)

| | F | |
|---|---|---|

**fact** (10:16)
**fair** (23:22)
**fall** (4:8)
**falls** (10:15)
**familiar** (19:7)(20:6)
**far** (22:7)(25:9)
**federal** (10:18)(13:14)
**few** (3:2)(6:2)(6:11)(27:22)

**filed**

**filed** (7:8)
**final** (17:17)
**financially** (30:12)
**firm** (3:21)
**first** (3:3)(3:15)(4:10)(4:18)(6:21)(11:8)(13:2)(15:10)(16:22)(20:23)(22:6)(26:4)(28:15)
**fit** (24:6)
**five** (7:18)(7:19)(8:2)(8:6)
**flow** (13:12)(19:21)
**flynn** (2:6)(4:5)
**folks** (29:6)
**following** (5:17)(21:1)
**footnote** (9:12)
**for** (1:2)(3:2)(3:4)(3:13)(3:14)(3:15)(3:19)(3:23)(4:3)(4:17)(5:17)(5:20)(6:2)(6:5)(6:6)(6:12)(6:22)(7:4)(7:6)(7:11)(7:19)(7:23)(8:6)(9:6)(9:22)(9:24)(10:6)(10:22)(11:11)(16:22)(17:5)(17:15)(18:1)(19:4)(19:12)(19:24)(20:10)(20:14)(20:18)(21:4)(21:20)(22:6)(22:13)(23:17)(24:6)(25:7)(26:15)(27:4)(28:1)(28:9)(28:12)(28:19)(29:2)(30:8)
**foreclosed** (22:17)
**foregoing** (30:3)(30:4)
**form** (5:19)(5:23)(6:1)(7:3)
**found** (8:16)
**frankel** (1:20)
**friday** (5:12)(6:16)
**from** (3:10)(3:18)(3:20)(4:3)(4:5)(4:21)(5:15)(6:20)(8:5)(9:23)(10:2)(16:18)(19:21)(22:17)(26:5)(27:11)(28:23)(29:4)
**front** (7:17)(8:19)(8:22)(12:15)
**full** (17:15)(23:22)
**fully** (13:21)
**functionalities** (18:18)(18:20)(19:2)(21:4)(22:11)
**functionality** (18:6)(19:11)(20:7)
**further** (3:12)(8:10)(16:3)(18:9)(28:11)(28:21)(30:7)(30:10)

**G**

**game** (14:19)
**gaming** (10:17)
**get** (4:18)(5:15)(12:19)(23:18)
**gets** (27:22)
**give** (5:13)(6:18)(16:7)(16:14)(16:20)(22:20)
**given** (25:22)
**going** (4:8)(5:7)(5:13)(6:10)(6:23)(7:19)(9:1)(12:1)(13:19)(15:3)(15:10)(16:13)(19:12)(19:24)(20:3)(20:17)(20:20)(20:21)(21:9)(21:17)(22:2)(22:7)(22:22)(23:15)(24:6)(25:21)(28:17)
**good** (3:17)(4:2)(11:19)(15:13)(29:5)
**grant** (9:2)
**guidance** (22:19)

**H**

**had** (5:1)(5:3)
**handle** (4:15)
**happen** (27:21)
**happens** (20:2)(23:20)(28:1)
**happy** (9:19)(26:6)
**hard** (6:8)(18:15)(22:13)
**has** (4:13)(5:6)(15:5)(19:8)(22:3)(27:23)
**have** (3:10)(3:13)(4:23)(6:12)(7:9)(7:11)(7:18)(8:8)(9:6)(9:15)(9:19)(10:5)(10:11)(10:13)(10:23)(11:17)(11:22)(12:18)(13:16)(13:23)(14:4)(14:7)(15:6)(15:13)(16:19)(17:13)(18:7)(19:7)(19:10)(19:19)(20:2)(20:13)(20:20)(21:23)(22:5)(22:10)(23:1)(23:6)(25:1)(25:10)(25:16)(25:19)(26:16)(27:3)(27:7)(28:10)(28:18)
**haven't** (24:14)
**having** (19:13)
**hawkins** (3:11)
**head** (18:9)(23:3)(25:6)
**heads-up** (16:15)
**hear** (9:23)
**heard** (15:3)(26:5)
**hearing** (6:22)(7:4)(7:9)

**hedvat** (1:21)(3:20)(10:1)(10:2)(12:3)(12:21)(16:24)(18:15)(22:9)(24:11)(26:4)(28:24)
**held** (6:23)(7:13)
**help** (21:4)
**helpful** (22:21)(23:1)
**her** (7:2)(7:10)(8:5)(8:6)
**here** (3:3)(3:4)(3:7)(3:9)(4:24)(8:4)(14:19)(15:4)(15:16)(16:8)(16:15)(20:7)(25:22)(27:1)(29:8)
**hey** (14:1)
**highlight** (24:16)
**highlighting** (21:2)
**his** (5:4)
**hits** (23:19)
**holding** (1:3)(3:5)(3:19)
**hone** (21:17)
**honor** (3:18)(4:3)(10:2)(12:3)(17:1)(20:4)(20:22)(22:10)(24:11)(25:24)(29:1)
**honorable** (1:14)
**hope** (17:19)
**hours** (7:23)(7:24)
**how** (9:18)(21:16)(25:14)(26:19)(27:1)(27:17)
**huge** (25:2)(25:19)

**I**

**identification** (17:14)(17:18)(18:22)
**identified** (18:19)(19:2)(21:6)(21:14)
**identifies** (19:18)
**identify** (3:13)(17:6)(17:8)(27:4)
**i'll** (4:16)(4:17)(6:13)(9:3)(9:22)
**i'm** (5:7)(5:13)(8:4)(9:19)(15:3)(20:20)(27:1)(28:17)
**imbalance** (25:2)(25:20)
**impedance** (18:5)(19:19)(19:23)
**implicitly** (26:11)
**important** (11:23)(16:12)(16:16)
**inc** (1:3)(3:5)
**include** (5:13)(11:11)
**included** (13:24)(24:1)
**including** (4:16)(5:19)
**indicates** (8:23)(27:24)
**indicia** (13:20)(14:2)(14:3)
**induced** (24:24)
**information** (10:12)(18:7)(25:4)(25:5)
**infringement** (12:9)(24:22)(24:23)(24:24)(25:15)(25:16)
**initial** (11:9)(22:23)(27:3)(28:5)
**inserted** (15:24)
**instance** (4:19)
**interested** (30:13)
**international** (22:14)
**into** (5:9)
**invalidity** (10:4)(10:24)(13:7)(13:18)(15:6)
**invalidity/validity** (15:14)
**isn't** (26:22)
**issue** (10:4)(10:9)(11:9)(11:15)(12:17)(13:4)(13:7)(13:9)(13:15)(14:9)(14:23)(15:1)(15:17)(16:9)(16:12)(16:20)(17:1)(17:19)(18:8)(19:5)(20:1)(20:7)(20:8)(20:23)(21:22)(22:2)(22:4)(24:17)(24:19)(25:1)(25:7)(25:8)(25:23)(26:3)(26:9)(27:1)(27:5)(27:13)(27:20)(28:8)
**issues** (4:9)(4:18)(16:3)(19:21)(19:23)(20:16)(21:1)(21:19)(23:10)(24:4)(24:9)(25:6)
**its** (23:21)
**it's** (8:13)(10:10)(11:3)(12:6)(13:13)(13:18)(14:11)(15:4)(15:6)(15:13)(16:13)(16:15)(17:11)(18:15)(19:23)(20:1)(22:13)(22:16)(22:21)(23:1)(23:16)(23:18)(26:4)(26:10)(26:21)
**itself** (27:23)
**i've** (8:15)(15:3)(26:23)

**J**

**jointly** (28:16)
**judge** (1:11)(4:14)(4:20)(5:2)(5:7)(5:23)(6:1)(6:4)(6:20)(7:2)(7:3)(7:7)(7:20)(7:21)(16:12)(19:6)(22:3)(24:18)(27:15)(27:24)(28:2)(28:3)(28:4)(28:10)(28:14)(28:16)

**judges**

judges  (27:18)(27:19)
juncture  (22:18)
jury  (7:15)
just  (3:2)(4:7)(4:11)(8:11)(8:13)(8:21)(9:7)(9:10)
(9:14)(11:6)(11:15)(13:12)(14:17)(14:20)(16:14)(23:18)
(24:18)(25:22)(27:11)(27:12)(27:22)(28:12)(28:17)
(28:18)

**K**

keep  (28:13)
key  (5:14)(6:19)(15:13)
kind  (4:8)(6:10)(8:13)(21:19)(27:17)
king  (1:12)
know  (4:23)(8:8)(13:19)(14:8)(16:21)(18:15)(18:16)
(19:6)(21:14)(22:8)(22:14)(22:21)(27:17)
knows  (24:1)
korean  (20:12)
kraman  (2:3)(4:2)(4:3)
kramer  (1:20)(3:20)(10:2)

**L**

laid  (10:3)(11:4)(17:13)
language  (15:23)
later  (5:11)(18:10)(18:13)
law  (3:20)(9:1)(26:22)
least  (24:21)
left  (12:6)(12:19)
less  (8:1)(9:1)
let  (3:2)(3:12)(4:7)(6:18)(8:11)(11:15)(13:1)(16:21)
(19:3)(27:12)
letter  (6:4)(17:4)
letters  (26:12)
levin  (1:20)(3:20)(10:2)
light  (15:2)
like  (9:5)(11:14)(12:4)(12:6)(18:2)(18:9)(21:2)
(21:12)(23:6)
likely  (16:13)(16:17)(22:22)
limit  (17:6)
limited  (22:20)
lines  (16:11)(21:13)
litigation  (22:16)
little  (6:7)(9:20)(26:11)
llp  (1:18)
llp  (1:20)(2:2)(2:5)
logical  (14:20)
logically  (13:12)
look  (21:7)
looking  (21:4)
lot  (18:7)(21:15)
ltd  (1:6)(3:6)

**M**

made  (20:9)(20:18)(23:6)
magistrate  (1:14)(27:15)(27:18)(27:24)(28:3)(28:14)
(28:16)
main  (9:17)(17:19)
maintain  (18:17)
make  (9:21)(15:16)(26:20)(28:10)
makes  (8:3)(10:18)(13:15)(14:6)(15:9)(15:12)(15:15)
making  (23:21)
management  (1:10)(3:4)(8:14)(16:9)(28:22)(29:8)
manner  (17:13)
many  (27:2)
market  (20:14)(20:19)
markman  (6:22)
material  (11:11)
materialize  (23:4)
matter  (3:5)(20:2)
may  (6:11)(12:7)(17:2)(19:24)(21:24)(25:23)(27:1)
(27:14)(27:17)
maybe  (17:20)
meant  (9:4)
meet-and-confer  (10:6)(17:5)
might  (8:1)(9:6)(18:12)(21:12)(24:18)

**packaged**

mind  (21:19)(25:17)(28:13)
minimum  (18:23)
moment  (8:11)
monday  (1:8)
more  (8:1)(9:5)
most  (26:14)
motion  (8:21)(9:2)
motions  (4:18)(7:5)(7:8)(8:18)
much  (23:1)

**N**

naftalis  (1:20)
narrow  (14:5)
necessarily  (13:19)
need  (5:14)(28:21)
needs  (18:4)
neither  (30:7)
new  (5:9)(6:11)(15:21)
newer  (8:17)(8:24)
next  (17:18)
nobody  (13:17)(25:16)
non-anda  (5:24)
noninfringement  (12:8)(12:22)
nonspecifically  (26:17)
nor  (30:8)(30:12)
noreika  (4:14)(4:20)(5:7)(7:2)
noreika's  (5:23)(6:21)(7:20)
not  (6:4)(6:7)(7:4)(11:19)(11:23)(13:18)(14:7)(14:11)
(14:19)(14:22)(15:13)(15:14)(16:19)(17:12)(17:19)
(19:9)(22:5)(23:18)(26:11)(27:1)(27:14)(28:17)(28:18)
(30:11)
notary  (30:17)
note  (7:17)(7:20)(8:14)(26:10)(27:11)
noted  (25:16)
nothing  (8:3)(29:4)
november  (7:13)(7:14)
now  (5:6)(10:22)(18:14)(24:22)
number  (7:23)(7:24)(28:6)

**O**

obviously  (4:20)(4:24)(6:3)(7:21)(8:3)(13:16)(15:21)
(20:12)(22:21)(23:11)(23:20)(27:23)
obviousness  (10:10)(10:15)(10:20)(12:11)(13:22)(13:23)
o'clock  (6:24)(7:13)(7:14)
october  (6:23)(6:24)
off  (18:9)(23:3)(25:7)(29:7)
okay  (15:2)(19:3)(24:9)(26:1)(27:12)(29:5)
one  (4:22)(8:8)(8:12)(9:11)(11:17)(16:13)(19:15)
(19:22)(19:24)(20:7)(20:15)(20:24)(25:6)(26:9)(26:14)
(27:12)
ones  (24:5)
only  (13:9)(15:1)(17:1)(24:17)(25:15)
opening  (9:16)(10:7)(12:11)(12:16)(13:6)(14:12)
opportunities  (8:18)
opportunity  (10:13)(10:23)(14:5)(16:8)(16:21)
oral  (8:23)(9:2)
order  (5:5)(5:11)(5:18)(5:20)(5:21)(5:23)(6:1)(6:15)
(7:3)(8:15)(8:20)(9:8)(9:13)(10:4)(10:7)(17:14)(23:14)
(25:10)
other  (8:12)(9:3)(12:4)(14:14)(19:1)(20:16)(20:24)
(22:15)(24:9)(24:17)(26:10)(27:12)(28:14)
others  (26:21)
otherwise  (9:6)(16:2)
our  (3:7)(3:12)(5:10)(10:2)(10:24)(11:3)(12:8)(13:11)
(13:18)(13:23)(14:8)(14:22)(14:23)(16:16)(17:3)(17:11)
(17:17)(19:14)(22:16)(27:17)(28:22)(29:4)(29:5)(29:7)
out  (7:10)(9:1)(10:3)(10:17)(11:4)(17:13)(21:15)(25:5)
outlined  (17:3)
out-of-town  (29:6)
outside  (20:11)(20:14)(20:19)(22:1)(22:13)
over  (4:8)

**P**

packaged  (24:22)

| page | said |
|---|---|

**page**

page (9:12)
papers (24:20)
part (21:2)
particularly (22:24)(25:13)(26:24)(27:6)
parties (4:23)(5:8)(6:6)(6:14)(7:10)(7:18)(7:22)(8:8)
(9:4)(9:7)(9:13)(9:15)(9:19)(10:5)(15:6)(15:20)(16:1)
(18:13)(22:23)(23:8)(23:12)(24:5)(26:9)(27:6)(27:17)
(28:12)(28:16)(30:9)
parts (5:18)(5:21)(26:15)
party (23:20)
patent (5:20)(5:23)(13:18)(26:16)
patrick (2:6)(4:5)
pending (8:22)
perceive (19:16)
period (4:20)
persuasion (13:17)
pertain (18:24)
phone (28:10)
piece (11:17)(11:23)(12:5)(12:10)(14:2)(14:7)(15:13)
pilar (2:3)(4:3)
plaintiff (1:4)(1:22)(6:14)(10:11)(13:8)(15:7)(15:11)
(18:10)(21:7)(24:1)(24:10)(25:2)(25:20)(26:19)(27:4)
plaintiffs (15:19)(17:24)
plaintiff's (3:15)(9:23)(13:1)(16:22)(21:21)(26:2)
(28:23)
play (14:19)
point (5:1)(15:10)(25:24)(28:9)(28:15)
pop (16:14)
portion (8:16)(9:8)(15:22)
position (9:21)(10:3)(10:11)(10:14)(10:24)(11:3)
(13:23)(14:8)(14:11)(14:22)(15:4)(15:23)(17:11)(22:16)
(25:12)
positions (12:8)(12:22)
possible (23:2)
potential (21:15)(23:3)
potentially (22:2)
potter (1:18)(3:18)
preference (7:10)
present (12:7)
presentation (14:20)
presentations (7:23)
pretrial (7:12)
pretty (6:13)(11:22)(22:20)
previously (5:2)(22:5)
primary (17:1)
procedural (4:9)
procedurally (28:22)
procedures (23:14)(24:3)(24:7)
proceeding (30:5)(30:10)
proceedings (29:9)
process (6:3)(8:12)(12:1)(15:15)(17:5)(23:1)(26:15)
produced (20:10)
product (20:15)
production (11:13)(13:14)(15:7)(17:3)(17:8)(17:16)
(17:21)(18:4)(18:24)(20:17)(23:18)(23:21)(23:23)
products (17:7)(17:9)(17:15)(18:2)(18:18)(18:22)
(19:10)(19:14)(20:10)(20:13)(20:18)(21:6)(21:8)(21:13)
(21:16)(21:24)(22:13)(26:17)(26:18)(26:21)(27:2)(27:5)
professional (30:2)(30:17)
proposal (10:22)(11:3)(13:4)
proposed (4:24)(5:4)(5:11)(6:15)(9:13)(15:21)
proposing (11:7)(11:20)
provide (5:3)(8:10)(9:20)(11:16)(14:24)(15:20)
provided (4:23)
provides (7:22)
providing (8:17)(18:21)
provision (27:23)
public (30:17)
pull (6:20)
purpose (10:18)
purposes (28:1)
pursuant (23:13)
pursuing (27:16)
put (13:14)

**said**

putting (7:6)
puzzle (11:17)(11:23)

**Q**

qualcomm (19:20)
question (21:22)

**R**

rainey (2:5)(4:5)(13:11)(14:18)(19:6)(21:10)(21:20)
(24:14)(24:17)(29:4)
raise (11:12)(23:12)(24:10)(24:15)(25:23)(27:9)
raised (4:18)(10:8)(12:11)(13:7)(15:11)(24:5)
raising (20:21)(26:9)
reach (7:9)(23:9)
read (11:6)
reading (13:3)
reality (9:14)
really (9:14)(18:12)
reassigned (5:7)
rebut (10:13)(10:19)
rebuttal (9:16)(10:8)(10:24)(12:5)(12:6)(12:8)(12:10)
(12:14)(12:18)(12:23)(13:8)(14:6)(15:1)(15:12)
rebutted (13:10)
recently (22:3)(27:16)
record (3:1)(3:3)(3:10)(3:14)(29:7)
referral (5:10)
referred (4:14)
regard (6:19)(12:14)(15:8)(23:7)
reiterate (4:11)
relate (16:10)(21:16)
related (15:22)(20:18)(22:12)(30:8)
relates (8:17)(20:8)(22:4)
relating (18:5)(19:1)
relative (30:11)
relevant (25:14)
rely (10:17)
reorganized (27:17)
reply (11:16)(13:9)(14:16)(15:17)
report (9:16)(10:8)(11:2)(11:9)(11:10)(11:13)(11:18)
(11:24)(12:6)(12:14)(12:16)(12:20)(13:6)(13:8)(13:10)
(13:24)(14:6)(14:12)(14:16)(14:23)(15:1)(15:12)(15:15)
(15:17)
reporter (3:10)(30:3)(30:17)
reporting (3:11)
reports (10:7)(12:11)(12:19)(12:23)(15:22)
representative (26:21)
requested (7:18)
requesting (8:22)
requires (6:2)
reserve (7:19)
reserving (8:6)
resolution (24:6)(27:14)
resolve (4:15)
resolved (24:6)
resources (16:18)
respect (17:2)(18:17)
respond (13:24)(14:5)
responded (11:24)(12:2)
response (14:1)(14:24)(26:3)
responsible (4:17)(6:22)
responsive (11:13)(11:18)
restricted (17:12)
resubmit (5:10)
retains (7:21)
reveal (10:12)
reviewing (7:7)
revised (6:15)
richard (2:5)(4:5)
right (12:24)(13:4)(21:10)(24:22)(26:8)
role (4:11)

**S**

safe (29:6)
said (9:10)

**sales**

**the**

**sales**  (22:15)
**same**  (3:23)(6:10)(12:21)(12:23)
**samsung**  (1:6)(3:6)(4:4)(19:8)(20:12)(25:8)(25:18)
**satius**  (1:3)(3:5)(3:19)
**satius'**  (10:14)
**say**  (3:2)(8:11)(12:13)(13:5)(13:19)(14:15)(14:22)
(14:24)(17:1)(18:11)(26:2)(27:12)
**saying**  (11:15)(14:14)
**says**  (8:21)(25:10)
**schedule**  (4:24)(5:4)(6:19)(7:6)(8:9)(9:11)(15:21)
(27:22)(27:23)(28:9)(28:15)
**scheduling**  (5:5)(5:11)(5:18)(5:20)(5:21)(5:23)(6:1)
(6:15)(7:3)(9:13)(10:3)(10:6)(16:10)(17:14)(23:14)
**scheduling-related**  (16:3)(16:7)
**school**  (9:1)
**scope**  (17:9)(17:20)(19:17)(19:22)(26:7)
**scope of**  (20:5)
**searching**  (19:12)(19:24)
**second**  (5:14)(11:6)(11:21)(20:8)(20:20)(21:22)(22:24)
**secondary**  (9:17)(10:9)(10:19)(11:1)(11:10)(12:4)
(12:9)(12:14)(13:5)(13:20)(14:2)(14:3)(14:15)(15:8)
(15:17)
**secondly**  (21:11)(25:19)
**see**  (7:2)(10:24)(14:24)(16:4)(16:14)(19:4)(23:8)
(26:6)(28:8)
**seeking**  (20:17)
**seemed**  (11:14)
**seems**  (13:12)(13:14)(18:9)
**sense**  (8:3)(13:15)(14:6)(15:9)(15:12)(15:16)
**service**  (3:11)
**set**  (7:4)(7:22)(28:5)
**settlement**  (28:8)
**seven**  (8:24)
**shannon**  (1:21)(3:20)(10:2)(19:20)(20:8)(20:15)
**she**  (4:14)(7:9)(7:22)
**she'll**  (7:9)
**shifting**  (19:17)
**short**  (22:9)
**should**  (9:15)(10:11)(10:13)(11:4)(13:2)(17:7)(18:24)
(23:21)(24:1)
**shouldn't**  (6:8)(22:17)
**side**  (3:13)(3:15)(3:24)(8:22)(8:23)(9:23)(9:24)(13:1)
(13:2)(14:14)(16:8)(16:16)(16:21)(16:23)(19:4)(24:14)
(28:23)(29:3)
**sides**  (16:19)(23:2)(28:6)
**silverstein**  (1:18)(3:17)(3:18)
**similar**  (5:24)(21:8)
**simply**  (12:10)(19:12)
**since**  (25:13)
**sitting**  (25:4)
**situation**  (19:8)
**size**  (25:3)
**slightly**  (8:1)
**sold**  (20:10)
**solely**  (15:17)(20:10)(20:14)(20:18)(21:24)(22:12)
(25:17)(25:24)(28:6)(28:13)
**some**  (5:14)(6:5)(14:13)(16:17)(18:3)(23:6)(23:9)
(25:17)(25:24)(28:6)(28:13)
**something**  (6:12)(8:13)(14:15)(14:16)(16:11)(16:16)
(16:17)(23:24)(28:12)
**sometimes**  (23:16)
**somewhere**  (24:20)
**soon**  (24:2)(28:13)
**sought**  (17:5)(25:21)
**sounds**  (18:2)(21:2)(21:12)(23:6)
**span**  (23:24)
**specifically**  (17:6)(21:5)(21:14)
**specifications**  (19:1)
**stage**  (12:20)(22:20)(22:24)
**stages**  (22:23)
**standard**  (8:15)
**standing**  (8:20)(9:8)
**stargatt**  (2:2)
**stark**  (5:2)(6:5)(7:3)(22:3)
**stark's**  (6:1)

**start**  (3:14)(4:7)(27:3)(28:7)
**state**  (5:10)(25:17)
**states**  (1:1)(1:14)(20:11)
**stay**  (28:18)
**step**  (5:8)
**strange**  (14:7)
**street**  (1:12)
**strictly**  (10:15)
**subject**  (17:7)(22:15)
**submission**  (17:4)
**submit**  (6:14)(11:2)(23:15)
**submitted**  (15:18)(24:21)
**substance**  (4:10)(5:16)
**substantially**  (21:8)
**substantive**  (8:9)(9:11)
**such**  (16:20)(20:15)(26:18)
**sure**  (21:20)(27:1)(28:17)
**suspect**  (27:1)

**T**

**table**  (4:4)
**take**  (5:9)(16:17)(28:21)
**taken**  (30:10)
**takes**  (8:4)
**taking**  (3:11)(4:21)
**talk**  (4:10)(4:22)(23:8)(28:7)
**talked**  (24:15)
**talking**  (16:6)(25:17)
**taneha**  (30:2)(30:16)
**taylor**  (2:2)
**technical**  (17:3)(17:8)(17:16)(17:20)(17:24)(18:4)
(18:17)(18:24)(21:18)(23:17)(23:23)
**tee**  (20:16)(24:2)
**teed**  (23:19)(24:20)
**teleconference**  (28:6)
**tell**  (16:8)
**tens**  (19:4)
**term**  (18:5)
**terms**  (25:3)(25:21)
**than**  (5:11)(8:1)(9:6)
**thank**  (3:22)(4:7)(10:1)(16:24)(24:12)(28:24)
**that**  (3:3)(4:8)(4:18)(4:22)(5:1)(5:6)(5:10)(5:13)
(5:14)(5:16)(5:22)(6:12)(6:16)(6:17)(6:19)(7:6)(7:8)
(7:9)(7:17)(7:21)(7:24)(8:4)(8:13)(8:14)(8:15)(8:17)
(8:21)(8:23)(8:24)(9:7)(9:8)(9:13)(9:14)(9:15)(9:18)
(10:4)(10:7)(10:8)(10:9)(10:11)(10:12)(10:14)(10:17)
(10:22)(11:2)(11:3)(11:6)(11:7)(11:10)(11:11)(11:15)
(12:4)(12:7)(12:16)(12:19)(12:22)(13:9)(13:11)(13:12)
(13:14)(13:17)(13:22)(14:1)(14:2)(14:5)(14:6)(14:11)
(14:12)(15:1)(15:5)(15:10)(15:11)(16:1)(16:11)(16:13)
(16:15)(16:17)(16:19)(17:7)(17:9)(17:11)(17:13)(18:1)
(18:8)(18:16)(18:23)(19:8)(19:12)(19:15)(19:19)(19:21)
(19:24)(20:3)(20:9)(20:10)(20:13)(20:16)(20:19)(20:24)
(21:1)(21:8)(21:13)(21:16)(21:19)(21:23)(21:24)(22:3)
(22:7)(22:12)(22:17)(22:21)(23:7)(23:11)(23:14)(23:16)
(23:19)(23:20)(23:21)(23:24)(24:1)(24:2)(24:4)(24:5)
(24:10)(24:14)(24:15)(24:18)(25:11)(25:23)(26:4)(26:9)
(26:18)(27:8)(27:11)(27:14)(27:15)(27:21)(27:24)(28:1)
(28:4)(28:9)(28:15)(28:19)(28:21)(30:3)(30:7)(30:10)
**that's**  (4:16)(6:23)(6:24)(7:10)(7:14)(7:16)(8:15)
(8:21)(11:18)(11:20)(14:18)(14:21)(16:12)(16:16)
(19:23)(20:3)(26:24)(27:5)(28:17)
**the**  (1:1)(1:2)(1:14)(3:1)(3:3)(3:5)(3:9)(3:10)(3:14)
(3:15)(3:22)(3:23)(4:6)(4:9)(4:10)(4:11)(4:13)(4:18)
(4:19)(4:23)(5:1)(5:4)(5:6)(5:8)(5:9)(5:11)(5:13)
(5:15)(5:16)(5:17)(5:18)(5:21)(6:3)(6:5)(6:6)(6:9)
(6:10)(6:13)(6:19)(6:21)(7:6)(7:7)(7:10)(7:12)(7:15)
(7:17)(7:19)(7:21)(7:22)(7:23)(8:3)(8:6)(8:8)(8:9)
(8:14)(8:16)(8:20)(8:23)(9:1)(9:6)(9:7)(9:9)(9:11)
(9:12)(9:13)(9:14)(9:15)(9:16)(9:19)(10:3)(10:4)(10:5)
(10:6)(10:11)(10:15)(10:16)(10:17)(10:18)(10:23)(11:3)
(11:5)(11:6)(11:9)(11:13)(11:17)(11:23)(11:24)(12:4)
(12:6)(12:12)(12:14)(12:20)(12:21)(12:23)(12:24)(13:1)
(13:4)(13:7)(13:8)(13:13)(13:14)(13:16)(13:22)(14:7)

**their**

(14:8)(14:10)(14:11)(14:14)(14:16)(14:20)(14:23)(15:2)
(15:4)(15:5)(15:6)(15:7)(15:11)(15:14)(15:15)(15:17)
(15:18)(15:20)(15:22)(15:23)(15:24)(16:1)(16:2)(16:4)
(16:8)(16:11)(16:12)(16:15)(16:18)(16:19)(16:22)(17:1)
(17:3)(17:4)(17:6)(17:8)(17:9)(17:13)(17:14)(17:15)
(17:18)(17:20)(17:23)(18:2)(18:3)(18:8)(18:10)(18:13)
(18:16)(18:18)(18:19)(18:20)(18:21)(18:22)(18:23)
(19:3)(19:7)(19:15)(19:16)(19:17)(19:22)(19:23)(20:5)
(20:6)(20:7)(20:8)(20:11)(20:14)(20:15)(20:19)(20:23)
(20:24)(21:1)(21:3)(21:5)(21:6)(21:11)(21:12)(21:13)
(21:18)(21:21)(21:22)(21:23)(22:1)(22:2)(22:6)(22:8)
(22:9)(22:13)(22:14)(22:16)(22:19)(22:22)(22:23)
(22:24)(23:2)(23:4)(23:8)(23:10)(23:12)(23:13)(23:14)
(23:16)(23:18)(23:20)(24:1)(24:3)(24:4)(24:10)(24:13)
(24:15)(24:17)(24:19)(24:20)(24:21)(25:1)(25:2)(25:3)
(25:4)(25:6)(25:9)(25:10)(25:20)(25:22)(26:1)(26:4)
(26:7)(26:8)(26:9)(26:12)(26:14)(26:15)(26:18)(26:22)
(27:2)(27:4)(27:6)(27:8)(27:13)(27:15)(27:16)(27:20)
(27:21)(27:22)(28:3)(28:7)(28:8)(28:9)(28:12)(28:14)
(28:15)(28:23)(29:2)(29:5)(29:7)(29:9)(30:3)(30:4)
(30:9)
**their**  (9:21)(10:22)(11:8)(12:7)(12:16)(12:22)(12:23)
(13:3)(13:6)(15:12)(15:21)
**them**  (5:3)(8:10)(11:5)(11:21)(19:20)(21:9)(26:6)(27:9)
**themselves**  (3:14)
**then**  (4:9)(5:20)(9:2)(9:21)(9:23)(10:8)(11:1)(11:15)
(12:12)(13:8)(14:16)(17:16)(17:17)(21:1)(23:20)(28:2)
**there**  (3:16)(4:21)(6:11)(7:11)(9:10)(9:15)(13:9)
(15:21)(15:24)(18:10)(19:21)(21:7)(21:15)(22:21)
(23:11)(24:9)(25:5)(27:2)(27:8)(28:21)
**thereafter**  (28:7)
**there's**  (6:2)(8:21)(11:18)(14:1)(14:2)(15:9)(19:4)
(20:24)(21:14)(23:17)(24:23)(24:24)(25:13)(25:14)
**these**  (18:1)(19:19)(22:11)
**they**  (4:24)(8:11)(10:12)(10:22)(11:8)(11:14)(12:7)
(12:15)(12:17)(13:5)(13:24)(14:8)(14:24)(16:20)(18:5)
(19:5)(20:13)(20:17)(21:16)(22:12)(23:3)(23:9)(24:5)
(24:8)(27:10)
**they're**  (11:20)(13:19)(18:9)
**thing**  (4:22)(11:19)(11:22)(15:13)(26:10)
**things**  (3:2)(4:8)(4:21)(8:12)(9:3)(12:19)(19:15)
(28:20)
**think**  (6:9)(9:10)(9:12)(12:24)(14:6)(15:15)(18:11)
(20:5)(24:4)(24:18)(24:20)(25:9)(25:23)(26:10)(26:12)
(26:15)(27:10)(28:16)
**this**  (3:6)(5:12)(6:16)(9:14)(11:17)(13:15)(14:1)
(16:12)(17:10)(18:11)(19:5)(19:7)(19:17)(19:18)(20:6)
(22:4)(22:18)(22:20)(24:10)(24:20)(24:21)(25:1)(25:7)
(25:19)(25:23)(26:3)(26:5)(30:10)(30:12)(30:13)
**those**  (19:2)(20:9)(21:16)(21:18)(21:19)(22:1)(23:9)
(23:12)(24:7)(26:18)(28:20)
**thousands**  (19:9)
**three**  (19:18)
**through**  (4:19)(4:21)(5:22)(16:2)(24:3)(26:23)(27:10)
**thus**  (25:9)
**thynge**  (28:2)
**tied**  (10:10)
**time**  (6:5)(8:2)(9:5)(13:22)(16:5)(16:17)(22:6)(24:10)
**timely**  (27:9)
**today**  (3:3)(3:12)(3:20)(8:4)(24:5)(29:8)
**too**  (27:5)
**topside**  (13:23)(14:23)
**totally**  (25:12)
**transcript**  (30:4)
**travels**  (29:6)
**trial**  (4:21)(5:22)(7:15)(7:19)(7:23)(8:2)(8:7)
**tried**  (26:23)
**trove**  (25:5)
**true**  (30:4)
**trust**  (16:4)
**try**  (23:3)
**trying**  (14:20)(18:9)(21:17)
**tuned**  (28:19)
**tuner**  (18:6)(19:23)

**will**

**tuners**  (19:19)
**turn**  (9:22)(13:1)(16:22)(19:3)
**two**  (8:12)(10:23)(19:20)(19:21)(22:23)
**type**  (18:16)

## U

**ultimately**  (10:21)(15:3)(28:2)
**under**  (4:9)(10:15)
**understand**  (13:1)(18:14)(20:9)
**understood**  (26:1)
**underway**  (17:12)
**undoubtedly**  (12:5)
**united**  (1:1)(1:14)(20:11)
**unlike**  (7:3)
**unreasonable**  (25:12)
**until**  (17:11)(22:10)
**upfront**  (10:12)
**upon**  (10:17)
**urge**  (27:6)
**use**  (21:24)
**useful**  (28:17)
**utilize**  (5:19)(5:22)

## V

**validity**  (11:8)(11:23)(12:16)(14:13)
**varying**  (19:11)
**vehicle**  (20:1)
**very**  (5:24)(25:8)(26:22)
**view**  (12:12)(13:12)

## W

**wait**  (14:23)
**waiting**  (11:11)
**want**  (12:15)(14:4)(16:14)(19:5)(25:6)(25:11)(25:22)
**wanted**  (24:15)
**wants**  (7:9)(18:11)(26:2)
**was**  (9:10)(10:8)(11:6)(11:7)(13:3)(13:7)(25:18)(30:10)
**way**  (5:17)(8:12)(11:12)(12:22)(13:13)(14:13)
**website**  (8:17)(9:9)
**week**  (5:12)(6:16)
**weeks**  (18:21)(28:7)
**welcome**  (3:22)(4:6)
**well**  (4:10)(9:24)(20:6)(22:19)(26:13)(27:11)
**we'll**  (3:1)(3:14)(3:15)(3:23)(4:22)(14:23)(14:24)
(29:7)
**were**  (6:20)(11:7)(11:14)(16:2)(18:2)(24:9)
**we're**  (3:3)(3:9)(7:19)(8:5)(14:19)(19:12)(19:23)
(20:20)(20:21)(21:8)(21:17)(26:5)
**we've**  (10:3)(11:3)(18:19)(19:2)(20:16)(26:5)(26:12)
(27:16)
**what**  (4:16)(5:24)(8:2)(8:20)(9:17)(10:21)(11:6)
(11:14)(11:20)(11:22)(12:13)(13:19)(14:8)(14:14)
(14:17)(14:24)(15:3)(17:21)(18:5)(18:11)(18:12)(18:13)
(18:19)(19:16)(19:22)(20:2)(20:5)(20:6)(21:2)(21:4)
(21:17)(23:22)(25:4)(25:17)(26:12)(26:17)(27:21)
**whatever**  (18:1)
**what's**  (9:21)(17:9)(25:21)
**whatsoever**  (20:2)
**when**  (7:22)(11:24)(12:18)(13:4)(13:20)(15:20)(21:3)
(22:21)(24:2)(26:16)(27:20)(28:1)(28:8)
**when's**  (28:14)
**where**  (11:17)(12:19)(14:8)(19:7)(25:14)(27:5)
**whereas**  (12:1)
**whether**  (17:20)(18:3)(21:5)(21:6)(22:14)(26:20)
**which**  (5:1)(6:22)(8:9)(9:4)(9:8)(10:4)(10:15)(10:19)
(13:24)(15:10)(16:4)(17:15)(19:10)(25:7)(30:10)
**while**  (9:15)
**who**  (3:11)(15:7)(27:15)
**whoever**  (28:4)
**whole**  (11:17)
**who's**  (23:20)
**will**  (3:11)(3:24)(5:13)(5:16)(5:24)(6:4)(6:21)(6:22)
(7:2)(7:12)(7:15)(8:10)(9:2)(9:23)(11:5)(11:21)(12:13)
(12:17)(12:19)(14:13)(14:22)(15:22)(16:22)(17:9)

willful                                    you've

```
(17:19)(17:21)(18:20)(19:18)(20:4)(22:6)(24:2)(24:7)
(26:10)(27:2)(27:15)(27:21)(27:24)(28:2)(28:5)(28:14)
(28:18)
```
**willful** (24:23)(25:16)
**wilmington** (1:12)
**wish** (8:11)(29:6)
**wished** (24:10)
**with** (3:10)(3:16)(3:19)(3:24)(4:4)(4:20)(5:3)(5:4)
```
(6:17)(6:19)(7:22)(8:18)(9:18)(9:20)(11:8)(12:14)
(13:13)(15:8)(15:20)(17:2)(18:17)(19:7)(19:13)(20:6)
(23:12)(24:7)(26:6)(27:9)(27:18)(28:6)(28:20)
```
**without** (16:3)
**wms** (10:16)
**wondering** (21:3)
**won't** (7:5)
**word** (12:18)(27:13)
**work** (16:2)(21:16)(26:6)(26:23)(27:10)
**working** (27:18)
**world** (12:13)
**worth** (24:18)
**would** (8:2)(10:7)(11:8)(11:10)(11:11)(11:16)(12:5)
```
(12:23)(13:9)(13:21)(13:22)(13:24)(14:1)(14:4)(14:7)
(14:14)(14:17)(17:1)(18:23)(28:9)
```
**wouldn't** (11:21)(13:5)

## Y

**year** (17:17)
**years** (8:24)
**yes** (13:11)
**you** (3:22)(4:6)(4:7)(5:14)(5:19)(5:22)(6:12)(6:18)
```
(7:2)(7:11)(10:1)(11:12)(12:13)(12:17)(14:13)(16:14)
(16:24)(18:11)(18:13)(19:18)(22:8)(22:20)(23:6)(23:10)
(24:12)(28:18)(28:24)(29:6)
```
**young** (2:2)(4:3)
**your** (3:18)(4:2)(10:1)(11:12)(12:3)(12:12)(12:13)
```
(14:10)(14:12)(16:24)(20:4)(20:22)(21:19)(22:10)
(24:11)(25:24)(28:24)
```
**you're** (14:11)(16:13)(21:1)(21:3)(23:11)(23:15)
**you've** (6:10)(14:17)

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SATIUS HOLDING, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD.,<br>and SAMSUNG ELECTRONICS<br>AMERICA, INC.,<br><br>*Defendants*. | C.A. No. 18-850-MN-CJB<br><br>**JURY TRIAL DEMANDED** |

**SAMSUNG DEFENDANTS' OBJECTIONS AND RESPONSES TO**
**PLAINTIFF SATIUS HOLDING, INC.'S FIRST SET OF REQUESTS**
**FOR PRODUCTION OF DOCUMENTS (NOS. 1-48)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendants

Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc. ("SEA")

(collectively "Samsung") hereby submit their objections and responses to the First Set of

Requests for Production of Documents ("Requests for Production") by Satius Holding, Inc.

("Satius").

**GENERAL RESPONSES**

The following general responses are made with respect to each request included in the

Requests:

1.      Samsung incorporates by reference each General Objection below into each

Specific Response. A Specific Response may restate a General Objection for emphasis or

another reason. Failure to include a General Objection in a Specific Response is not intended to

waive the General Objection.

2.      No admissions are intended by these responses. An answer or objection does not mean Samsung accepts any presumed facts.

3.      Production of information, documents, or things does not imply an agreement or concession that they are relevant to or admissible in this proceeding, and is not to be construed as waiving any objection to the use of the information, documents, or things on any ground, including, but not limited to, those regarding relevance, materiality, propriety, admissibility, or any objection that may require the exclusion of evidence in this, or any other, proceeding.

4.      The Specific Responses set forth below are based upon Samsung's interpretation of the language used in the Requests, and Samsung reserves the right to amend or supplement its Responses in the event Satius asserts an interpretation that differs from Samsung's interpretation. Samsung shall follow the plain meaning of various terms.

5.      Samsung makes the following responses (and any commitment herein to produce information, documents, or things) based upon information reasonably available to it at this time, and reserves the right to supplement or amend these responses when, and if, necessary.

6.      Inadvertent production of information protected by the attorney-client privilege, the work product doctrine, the joint-defense or common-interest privilege, mediation privilege, or any other applicable privilege, doctrine, immunity, privacy legislation or regulation, or rule of confidentiality, is not intended and is not to be construed as a waiver of the protections afforded by that privilege, doctrine, immunity, privacy legislation or regulation, or rule of confidentiality or waiver of the provisions regarding inadvertent production under Section 15 of the Stipulated Protective Order (D.I. 29).

7.      Samsung will provide information, documents, or things that are within its possession, custody, or control, that are maintained in the ordinary course of business, and that are located after a reasonable search, if any, in accordance with its Responses.

8.      Samsung's counsel is prepared to meet and confer with Satius's counsel about any disputes that may arise concerning the meaning, scope, and relevance of Satius's Requests or these Objections and Responses.

9.      A Response by Samsung to a Request is not a representation that Samsung adopts, accepts, affirms, or admits the assertions, contentions, characterizations, instructions, or definitions used or made in connection with the Request, nor is it a representation that any information provided is relevant or admissible. Further, an Objection by Samsung to a Request is not a representation by Samsung as to the existence or nonexistence of information responsive to the Request.

10.      Samsung reserves the right to assert further Objections to the Requests in addition to the General and Specific Objections stated below, including any Objections necessary after Samsung clarifies the meaning of vague or ambiguous terms in Satius's Requests.

**GENERAL OBJECTIONS**

11.      Samsung objects to the requests and definitions to the extent that they conflict with or seek to impose any requirements in addition to, or different than, those required by the Federal Rules of Civil Procedure ("Federal Rules"), the Local Rules of the United States District Court for the District of Delaware ("Local Rules"), the Discovery Schedule entered by the Court in this litigation, the Default Standard for Discovery, or any other schedule or ruling that may be entered by the Court (collectively, "Discovery Rules").  Samsung's responses to the Requests have been prepared in accordance with the Discovery Rules. Samsung shall follow the Discovery Rules. Where the Requests purport to require, instruct, or define an investigation that exceeds

– 3 –

that required under the applicable rules and orders, Samsung objects thereto on the grounds that such a requirement, instruction, or definition (i) exceeds the scope of permissible discovery, and (ii) improperly attempts to impose upon Samsung unreasonable burden and expense.

12.     Samsung objects to the "Definitions" and "Instructions" sections preceding the Requests as being vague and ambiguous, as well as overly broad and unduly burdensome. By submitting these responses, Samsung does not adopt Satius's purported definitions of words and phrases. Samsung objects to Satius's proposed "Definitions" as being susceptible to more than one meaning or inconsistent with the ordinary and customary meaning of such words and phrases or the rules governing the permissible scope of discovery. Samsung's use of any of Satius's definitions for purposes of answering or objecting to these requests shall not be deemed to constitute an agreement or acknowledgment on the part of Samsung that such definitions are accurate, meaningful, or appropriate for any purpose in this or other actions. Samsung shall use the plain and ordinary meaning of various terms.

13.     Samsung objects to Satius's definition of "You," "Your," and "Defendants" (Definition No. 1) to the extent that it includes any entity or person that is not a party to this action. Samsung further objects to Definition No. 1 on the ground that it is not reasonably limited in time or scope and to the extent it seeks to encompass information that is neither relevant nor proportional to the needs of the case and/or is not within Samsung's possession, custody, or control. Samsung also objects to this definition to the extent it presumes that Samsung has knowledge of each of the persons or entities within the scope of the definition. Samsung has thousands of employees located at worldwide locations and any request that purports to require Samsung to ascertain the knowledge of each of such individuals is overbroad, inappropriate, and

unduly burdensome. As used in these responses, "Samsung" shall mean "Samsung Electronics Co., Ltd." and "Samsung Electronics America, Inc."

14.     Samsung objects to the definitions of "relate to," "reflecting," "relating to," and "concerning" as vague, overly broad, unduly burdensome, not relevant to any party's claim, and not proportional to the needs of the case.

15.     Samsung objects to each request to the extent that it seeks documents related to third parties that are subject to a protective order, non-disclosure agreement, confidentiality agreement, or other obligation of confidentiality. Samsung objects to the Requests on the grounds that certain Requests seek information, documents, or things that Samsung is not permitted to disclose pursuant to confidentiality obligations with third parties, particularly without providing notice to such third parties in order for such third parties to object or to seek an appropriate protective or confidentiality order. Samsung's production of information, documents, or things in response to certain Requests will first require third-party approval or notice. Samsung is providing and will provide such notice, and an opportunity to object or intervene with respect to the production of such information, documents, or things, to third parties prior to producing such information, documents, or things. To minimize undue burden upon third parties, after providing such notice for third-party approval or confirmation, Samsung will disclose such information, documents, or things (i) in a manner consistent with the terms of the relevant confidentiality agreement(s), and (ii) upon the entry of an appropriate protective order in this action.

16.     Samsung objects to the Requests in calling for production of information, documents, or things protected by the attorney-client privilege, the work product doctrine, the mediation privilege, any other applicable privilege or immunity, any privacy law or regulation,

any protective order or confidentiality agreement, or are otherwise exempted from discovery. Samsung hereby asserts all applicable privileges and protections implicated by each Request, whether based upon statute or recognized at common law. Further, Samsung construes the Requests as not seeking production of information, documents, or things from the files of counsel that constitute attorney-client communications and/or work product generated in connection with this or other litigation, anticipated litigation, or government investigation. Samsung objects to the Requests as overbroad, unduly burdensome, and not proportional to the needs of the case insofar as they purport to require a search for such privileged and work product material. Samsung claims such privileges and immunities and shall not include such information in its responses; any production or disclosure of any privileged or work-product document or information by Samsung is unintentional and inadvertent, and Samsung does not waive any objection or privilege as a result of such production or disclosure. Samsung reserves the right to "claw-back" any inadvertently-produced privileged or protected information upon becoming aware of such production pursuant to the terms of the Stipulated Protective Order (D.I. 29). Thus, statements that Samsung shall produce information refer to non-privileged or non-immune information. Any privilege log that Samsung provides will be in accordance with the Delaware Default Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI"), including the provision that privileged documents post-dating the lawsuit need not be included on the log.

17.     Any statement in these responses that Samsung will produce responsive documents should not be construed as an assertion that any such documents exist; such a statement means only that Samsung will conduct a reasonable search for such documents within its custody, possession, or control. Samsung objects to the Requests, Instructions, and

Definitions in purporting to impose an obligation on Samsung to locate, obtain, and produce information, documents, or things that are not in the possession, custody, or control of Samsung, including information, documents, or things in the possession, custody, or control of any non-party affiliates of Samsung, any affiliates of Samsung that have not been served in this action, and any other non-party individuals or entities. Samsung is available to meet and confer regarding an appropriate narrowing of such requests. Samsung responds to the Requests on behalf of itself and not on behalf of any subsidiaries, affiliates, or other corporations or separate legal entities, or any other individuals.

18.     Samsung objects to each request to the extent that it seeks to impose an obligation on Samsung to locate and produce documents or things that are in the public domain, and therefore equally accessible to Satius, or that is otherwise readily available to Satius.  Thus, Samsung generally will not include information, documents, or things in Satius's possession, custody, or control, or publicly available information, documents, or things.

19.     Samsung objects to the Requests as being ambiguous, overly broad, unduly burdensome, not relevant to any party's claim, and not proportional to the needs of the case. Samsung will search for and produce information in accordance with its Specific Responses and Objections below.

20.     Samsung objects to the Requests in calling for the production of "all" documents relating to a subject as not being proportional to the needs of the case, overly broad, and unduly burdensome. In each case where Samsung has agreed to produce information, Samsung will instead produce information sufficient to show the response it has set forth to the Request. Samsung is available to meet and confer regarding an appropriate narrowing of such requests.

Samsung is further proposing to Satius a stipulation to address the efficient handling of electronically stored information ("ESI"). *See infra* General Objection No. 21.

21.     Samsung objects to the Requests in calling for production of ESI that is overbroad, unduly burdensome, and disproportionate to the needs of the case. Samsung is available to meet and confer regarding an appropriate narrowing of any such Requests, including by stipulating to reasonable limits on the scope of discovery of ESI. Samsung s expects to provide a draft of such a stipulation to Satius. Any such ESI will be produced once the parties agree to such a stipulation in accordance with the terms of such stipulation.

22.     Samsung objects to Requests seeking all versions of a document, including drafts, as not being proportional to the needs of the case, overly broad, and unduly burdensome. Samsung will not search for and produce non-final drafts, but is available to meet and confer with Satius regarding an appropriate narrowing of any such request, should there be any appropriate request for a non-final draft that is relevant to the issues remaining in the case and not unduly burdensome, with respect to a specific discovery item.

23.     Samsung objects to the Requests in calling for information, either electronically stored or stored in hard copy, that is not readily accessible. For example, Samsung will not search for information located within any backup systems, which would be unduly burdensome. Samsung is further proposing to Satius a stipulation to address the efficient handling of ESI. *See supra* General Objection No. 21.

24.     Samsung objects to the Requests as premature in that they seek the disclosure of expert testimony or opinions. Such information will be disclosed in accordance with the Court's scheduling order.

25.     Samsung objects to the Requests as calling for immediate production of information, documents, or things. Samsung shall search for and produce information, documents, and things on a rolling basis, consistent with the Scheduling Order set forth by the Court.

26.     Samsung objects to the Requests as being vague or ambiguous, or as failing to state with particularity the requested information, documents, or things, as more specifically set forth below.  Samsung objects to each request as vague and ambiguous to the extent that it uses undefined terms that are not commonly well understood. Samsung shall provide discovery in accordance with the plain and ordinary meaning of the Requests and Samsung's Specific Responses and Objections below.

27.     Samsung objects to each request to the extent that it requires or purports to require Samsung to make a special study, perform any calculations, generate documents that do not exist, or provide documents other than those maintained by Samsung in the ordinary course of business. Samsung will provide information, documents, or things that are within its possession, custody, or control, that are maintained in the ordinary course of business, and that are located after a reasonable search, if any.

28.     Samsung objects to each request as overly broad, unduly burdensome, not relevant to any party's claim, and not proportional to the needs of the case to the extent that it is unlimited in geography (i.e., beyond the United States), time, or otherwise not limited to a time frame relevant to this litigation and to the Asserted Patent. Unless otherwise stated in a response, Samsung will not produce documents concerning any product that Samsung has not made, used, offered to sell, or sold, within the United States, or imported into the United States and Samsung will not produce documents that pre-date June 2012 (six years prior to filing of the complaint).

29. Samsung objects to each request to the extent that it requires the production of original documents. Samsung will produce or make available for inspection copies of discoverable, responsive documents as appropriate.

30. Samsung objects to the each request to the extent it is compound or consists of multiple subparts.

31. Samsung reserves its right to amend or supplement these objections and responses as additional discovery and investigations continue, in the event that additional information is disclosed, or in the event of error, inadvertent mistake, or omission. No waiver of the above-stated objections shall be implied from inclusion of further or more specific objections in individual responses below or from the inclusion of a response. Samsung's objections and responses shall not be interpreted as implying that responsive documents exist or that the Request for Production is proper.

32. Samsung objects to Satius's definition of "Satius" (Definition No. 2) to the extent that it includes any entity or person that is not a party to this action. As used in these responses, "Satius" shall mean "Satius Holding, Inc."

33. Samsung objects to Satius's definition of "Complaint" (Definition No. 4) to the extent that it encompasses pleadings that have not been filed with the Court. As used in these responses, "Complaint" shall mean the Complaint filed by Satius on June 5, 2018 (D.I. 1).

34. Samsung objects to Satius's definition of "Asserted Patent" (Definition No. 5) as overly broad and unduly burdensome to the extent that the definition includes patents or patent claims that are not asserted in this action. Samsung further objects to Definition No. 5 on the ground that it is not reasonably limited in geographic scope and to the extent it seeks to

encompass information that is neither relevant nor proportional to the needs of the case. As used in these responses, "Asserted Patent" shall mean U.S. Patent No. 6,711,385.

35.     Samsung objects to Satius's definition of "Accused Products" (Definition No. 6) as overly broad and unduly burdensome in seeking to encompass information that is neither relevant nor proportional to the needs of the case, by seeking information not relevant to Satius's infringement allegations. Subject to and without waiving its objections, Samsung shall interpret the term "Accused Products" to mean any product identified in Satius's December 21, 2018 Identification of Accused Products and Patent that Samsung makes, uses, offers to sell, or sells, within the United States, or imports into the United States. Samsung will not produce information, documents, and things about products and components that are exclusively made, used, offered for sale and sold in foreign countries and not imported into the United States. In addition, Samsung disputes that the "Accused Products" infringe any claim found in the Asserted Patent.

36.     Samsung objects to Satius's definition of "prior art" (Definition No. 7) as vague, overly broad, and unduly burdensome as it seeks to encompass  "publications, patents, physical devices, …" etc., that merely "concern[] the subject matter of the Asserted Patent." Samsung further objects to this definition to the extent it calls for a legal conclusion. Samsung interprets the phrase "prior art" as information, documents, and things that may render a patent invalid under 35 U.S.C. §§ 102-103.

37.     Samsung objects to Satius's definition of "document(s)" (Definition No. 9) to the extent it is inconsistent with the definition in the Federal Rules of Civil Procedure or the Federal Rules of Evidence. As used in these responses, "document(s)" shall be used as defined in Federal Rule of Civil Procedure 34 or Federal Rule of Evidence 1001.

38.     The above General Objections apply to each of Satius's Requests, and are hereby incorporated into each of Samsung's Specific Responses and Objections set forth below. Samsung's Specific Responses and Objections may repeat or restate a General Objection for emphasis or some other reason; however, the failure to repeat or restate a General Objection in Samsung's Specific Responses and Objections shall not constitute a waiver of any General Objection.

**RESPONSES AND OBJECTIONS TO SATIUS'S**
**REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**

**REQUEST FOR PRODUCTION NO. 1:**

All functional specifications, flow charts, architecture diagrams, and design documents relating to the design of the radio frequency ("RF") components in the Accused Products.

**RESPONSE TO RFP NO. 1.**

Samsung incorporates by reference its General Objections. Samsung also objects to this Request for production as vague, overly broad, unduly burdensome, not relevant to any party's claim, and not proportional to the needs of the case in (a) seeking documents "relating to the design of the radio frequency ('RF') components" without limits tied to the needs of the case; (b) seeking technical and other documents regarding aspects of Samsung's products that are unrelated to the technology of the Asserted Patent; and (c) seeking documents related to third parties that are subject to a protective order, non-disclosure agreement, confidentiality agreement, or other obligation of confidentiality.  Regarding third-parties, Samsung shall follow the notice procedures set out in its General Objections. Samsung further objects to this Request as seeking documents that are in the public domain or already in Satius's possession, such that the burden of searching for, collecting, or compiling such documents is substantially the same for Satius as it is for Samsung.

– 12 –

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis, any non-privileged hardcopy documents and documents from the data sources listed in Section II of Samsung's Disclosures Pursuant to the Court's Default Standard for Discovery located after a reasonable search that are sufficient to show the design of antenna impedance tuners used for cellular transmission in the Accused Products that Samsung makes, uses makes, uses, offers to sell, or sells within the United States or imports into the United States, if any, and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation. Samsung notes that it has not yet received Satius's infringement contentions. After receiving Satius's infringement contentions, Samsung will evaluate whether any additional non-privileged documents relevant to Satius's infringement claims and proportional to the needs of the case may be located and produced. Samsung further notes that, pursuant to Paragraph 7(b) of the Court's Scheduling Order (D.I. 20), Samsung has already produced documents sufficient to show how the Accused Products work.  *See* SAM-SAT_0000001 - 0249006. Samsung is additionally available to meet and confer with Satius regarding any outstanding issue remaining with respect to this Request.

**REQUEST FOR PRODUCTION NO.  2:**

All functional specifications, flow charts, architecture diagrams, and design documents relating to the any transceiver used by the Accused Products.

**RESPONSE TO RFP NO. 2.**

Samsung incorporates by reference its General Objections. Samsung also objects to this Request for production as vague, overly broad, unduly burdensome, not relevant to any party's claim, and not proportional to the needs of the case in seeking (a) documents "relating to the any transceiver used by the Accused Products" without limits tied to the needs of the case; (b) documents regarding aspects of Samsung's products that are unrelated to the technology of

the Asserted Patent; and (c) documents related to third parties that are subject to a protective order, non-disclosure agreement, confidentiality agreement, or other obligation of confidentiality. Regarding third-parties, Samsung shall follow the notice procedures set out in its General Objections. Samsung further objects to this Request as seeking documents that are in the public domain or already in Satius's possession, such that the burden of searching for, collecting, or compiling such documents is substantially the same for Satius as it is for Samsung.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis, any non-privileged hardcopy documents and documents from the data sources listed in Section II of Samsung's Disclosures Pursuant to the Court's Default Standard for Discovery located after a reasonable search that are sufficient to show the design of antenna impedance tuners used for cellular transmission in the Accused Products that Samsung makes, uses makes, uses, offers to sell, or sells within the United States or imports into the United States, if any, and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation. Samsung notes that it has not yet received Satius's infringement contentions. After receiving Satius's infringement contentions, Samsung will evaluate whether any additional non-privileged documents relevant to Satius's infringement claims and proportional to the needs of the case may be located and produced. Samsung further notes that, pursuant to Paragraph 7(b) of the Court's Scheduling Order (D.I. 20), Samsung has already produced documents sufficient to show how the Accused Products work.  *See* SAM-SAT_0000001 - 0249006. Samsung is additionally available to meet and confer with Satius regarding any outstanding issue remaining with respect to this Request.

**REQUEST FOR PRODUCTION NO.  3:**

All functional specifications, flow charts, architecture diagrams, and design documents relating to the Qualcomm SDR845 RF transceiver.

– 14 –

**RESPONSE TO RFP NO. 3.**

Samsung incorporates by reference its General Objections. Samsung also objects to this Request for production as vague, overly broad, unduly burdensome, not relevant to any party's claim, and not proportional to the needs of the case in seeking (a) documents "relating to the Qualcomm SDR845 RF transceiver" without limits tied to the needs of the case; and (b) documents related to third parties that are subject to a protective order, non-disclosure agreement, confidentiality agreement, or other obligation of confidentiality. Regarding third-parties, Samsung shall follow the notice procedures set out in its General Objections. Samsung further objects to this Request to the extent it seeks documents not in the possession, custody, and control of Samsung. Samsung further objects to this Request as seeking documents that are in the public domain or already in Satius's possession, such that the burden of searching for, collecting, or compiling such documents is substantially the same for Satius as it is for Samsung.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis, any non-privileged hardcopy documents and documents from the data sources listed in Section II of Samsung's Disclosures Pursuant to the Court's Default Standard for Discovery located after a reasonable search that are sufficient to show the operation of the SDR845 component identified after a reasonable search, if any, and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation.

**REQUEST FOR PRODUCTION NO.  4:**

All functional specifications, flow charts, architecture diagrams, and design documents relating to the Qualcomm TruSignal Antenna.

**RESPONSE TO RFP NO. 4.**

Samsung incorporates by reference its General Objections. Samsung also objects to this Request as vague and overbroad for using the term "Qualcomm TruSignal Antenna" without

specifying specific components. Samsung also objects to this Request for production as vague, overly broad, unduly burdensome, not relevant to any party's claim, and not proportional to the needs of the case in (a) seeking documents "relating to the Qualcomm TruSignal Antenna" without limits tied to the needs of the case; and (b) seeking documents related to third parties that are subject to a protective order, non-disclosure agreement, confidentiality agreement, or other obligation of confidentiality. Regarding third-parties, Samsung shall follow the notice procedures set out in its General Objections. Samsung further objects to this Request to the extent it seeks documents not in the possession, custody, and control of Samsung. Samsung further objects to this Request as seeking documents that are in the public domain or already in Satius's possession, such that the burden of searching for, collecting, or compiling such documents is substantially the same for Satius as it is for Samsung.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis, any non-privileged hardcopy documents and documents from the data sources listed in Section II of Samsung's Disclosures Pursuant to the Court's Default Standard for Discovery located after a reasonable search that are sufficient to show the design of Qualcomm antenna impedance tuners used for cellular transmission in the Accused Products that Samsung makes, uses makes, uses, offers to sell, or sells within the United States or imports into the United States, if any, and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation.

**REQUEST FOR PRODUCTION NO. 5:**

All functional specifications, flow charts, architecture diagrams, and design documents relating to the Samsung Shannon transceivers, and including the most recent version of each.

– 16 –

**RESPONSE TO RFP NO. 5.**

Samsung incorporates by reference its General Objections. Samsung also objects to this Request for production as vague, overly broad, unduly burdensome, not relevant to any party's claim, and not proportional to the needs of the case in seeking documents "relating to the Samsung Shannon transceivers" without limits tied to the needs of the case and specifically without any geographic limits. Samsung further objects to this Request as seeking documents that are in the public domain or already in Satius's possession, such that the burden of searching for, collecting, or compiling such documents is substantially the same for Satius as it is for Samsung.

Subject to the foregoing objections, Samsung responds as follows:  Samsung will produce, on a rolling basis, any non-privileged hardcopy documents and documents from the data sources listed in Section II of Samsung's Disclosures Pursuant to the Court's Default Standard for Discovery located after a reasonable search that are sufficient to show the design of Shannon cellular transceivers for Accused Products with antenna tuners that Samsung makes, uses makes, uses, offers to sell, or sells within the United States or imports into the United States identified after a reasonable search, if any, and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation. Samsung notes that it has not yet received Satius's infringement contentions. Samsung notes, however, that to the extent additional documents are produced relating to Shannon cellular transceivers, such production should not be understood to convey whether any antenna tuner is utilized or associated with any such cellular transceiver. After receiving Satius's infringement contentions, Samsung will evaluate whether additional non-privileged documents that are relevant to Satius's infringement claims and proportional to the needs of the case may be located and produced. Samsung further notes that, pursuant to Paragraph 7(b) of the Court's Scheduling Order (D.I. 20), Samsung has already produced

documents sufficient to show how the Accused Products work.  *See* SAM-SAT_0000001 -

0249006.

**REQUEST FOR PRODUCTION NO. 6:**

All functional specifications, flow charts, architecture diagrams, and design documents
relating to the Qualcomm WTR3925 RF transceiver.

**RESPONSE TO RFP NO. 6.**

Samsung incorporates by reference its General Objections. Samsung also objects to this

Request for production as vague, overly broad, unduly burdensome, not relevant to any party's

claim, and not proportional to the needs of the case in seeking (a) documents "relating to the

Qualcomm WTR3925 RF transceiver" without limits tied to the needs of the case; and

(b) documents related to third parties that are subject to a protective order, non-disclosure

agreement, confidentiality agreement, or other obligation of confidentiality. Regarding third-

parties, Samsung shall follow the notice procedures set out in its General Objections. Samsung

further objects to this Request to the extent it seeks documents not in the possession, custody,

and control of Samsung. Samsung further objects to this Request as seeking documents that are

in the public domain or already in Satius's possession, such that the burden of searching for,

collecting, or compiling such documents is substantially the same for Satius as it is for Samsung.

Subject to the foregoing objections, Samsung responds as follows: Samsung will

produce, on a rolling basis, any non-privileged hardcopy documents and documents from the

data sources listed in Section II of Samsung's Disclosures Pursuant to the Court's Default

Standard for Discovery located after a reasonable search that are sufficient to show the operation

of the Qualcomm WTR3925 component identified after a reasonable search, if any, and any non-

privileged ESI, if any, collected in accordance with the parties' ESI stipulation.

**REQUEST FOR PRODUCTION NO. 7:**

All functional specifications, flow charts, architecture diagrams, and design documents relating to the Qualcomm WTR4905 RF transceiver.

**RESPONSE TO RFP NO. 7.**

Samsung incorporates by reference its General Objections. Samsung also objects to this Request for production as vague, overly broad, unduly burdensome, not relevant to any party's claim, and not proportional to the needs of the case in seeking (a) documents "relating to the Qualcomm WTR4905 RF transceiver" without limits tied to the needs of the case; and (b) documents related to third parties that are subject to a protective order, non-disclosure agreement, confidentiality agreement, or other obligation of confidentiality. Regarding third-parties, Samsung shall follow the notice procedures set out in its General Objections. Samsung further objects to this Request to the extent it seeks documents not in the possession, custody, and control of Samsung. Samsung further objects to this Request as seeking documents that are in the public domain or already in Satius's possession, such that the burden of searching for, collecting, or compiling such documents is substantially the same for Satius as it is for Samsung.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis, any non-privileged hardcopy documents and documents from the data sources listed in Section II of Samsung's Disclosures Pursuant to the Court's Default Standard for Discovery located after a reasonable search that are sufficient to show the operation of the Qualcomm WTR4905 component identified after a reasonable search, if any, and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation.

**REQUEST FOR PRODUCTION NO. 8:**

All functional specifications, flow charts, architecture diagrams, and design documents relating to the Murata transceiver.

– 19 –

**RESPONSE TO RFP NO. 8.**

Samsung incorporates by reference its General Objections. Samsung also objects to this Request for production as vague and unintelligible in requesting documents "relating to the Murata transceiver" without specifying any specific Murata component. Samsung also objects to this Request as overly broad, unduly burdensome, not relevant to any party's claim, and not proportional to the needs of the casein seeking documents "relating to the Murata transceiver" without limits tied to the needs of the case. Samsung further objects to this Request to the extent that it seeks documents related to third parties that are subject to a protective order, non-disclosure agreement, confidentiality agreement, or other obligation of confidentiality. Regarding third-parties, Samsung shall follow the notice procedures set out in its General Objections.

Subject to the foregoing, Samsung responds as follows: Because the Request does not specify what "the Murata transceiver" refers to, Samsung is unable to ascertain the scope of this Request and thus objects to the request as propounded. Samsung respectfully requests that Satius properly draft any discovery request for any such discovery, such that an intelligible request for production is set out, specifying the particular product or component for which discovery is sought. Samsung further requests that Satius tailor any such request to the needs of the case, rather than requesting "[a]ll functional specifications, flow charts, architecture diagrams, and design documents."

**REQUEST FOR PRODUCTION NO. 9:**

All functional specifications, flow charts, architecture diagrams, technical overviews, presentations and design documents relating to the Accused Products including all documents, communications, and things sufficient to show the design, development, structure, architecture, testing, research, updating or operation for each of the Accused Products.

**RESPONSE TO RFP NO. 9.**

Samsung incorporates by reference its General Objections. Samsung also objects to this Request for production as duplicative, vague, vastly over broad, unduly burdensome, not relevant to any party's claim, and not proportional to the needs of the case in seeking (a) documents "relating to the Accused Products" without any limits tied to the needs of the case; (b) documents regarding aspects of Samsung's products that are unrelated to the technology of the Asserted Patent; and (c) documents related to third parties that are subject to a protective order, non-disclosure agreement, confidentiality agreement, or other obligation of confidentiality. Regarding third-parties, Samsung shall follow the notice procedures set out in its General Objections. Samsung further objects to this Request as seeking documents that are in the public domain or already in Satius's possession, such that the burden of searching for, collecting, or compiling such documents is substantially the same for Satius as it is for Samsung.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce documents in response to Satius's specific Requests as laid out in Samsung's Objections and Responses to Requests No. 1-8. Samsung respectfully believes this request is duplicative of the forgoing requests and Samsung's objections and responses thereto. Samsung is available to meet and confer regarding this request should there be any practical issue relating to this request.

**REQUEST FOR PRODUCTION NO. 10:**

All documents, communications, and things relating to Satius.

**RESPONSE TO RFP NO. 10.**

Samsung incorporates by reference its General Objections. Samsung also objects to this Request for production as vague, overly broad, unduly burdensome, and not proportional to the needs of the case in that it seeks (a) documents "relating to Satius" without limits tied to the needs of the case; and (b) documents that are already in Satius's possession, such that the burden

of searching for, collecting, or compiling such documents is substantially the same for Satius as it is for Samsung. Samsung further objects to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, work product immunity, or the common interest privilege. Samsung is withholding privileged and/or work-product protected documents created after the filing of this action. Samsung further objects to this Request in calling for production of ESI that is overbroad, unduly burdensome, and disproportionate to the needs of the case. Samsung is available to meet and confer regarding an appropriate narrowing of any such Requests, including by stipulating to reasonable limits on the scope of discovery of ESI. Samsung expects to provide a draft of such a stipulation to Satius. Any such ESI will be produced once the parties agree to such a stipulation and pursuant to the terms of such stipulation.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis, any non-privileged hardcopy documents and documents from the data sources listed in Section II of Samsung's Disclosures Pursuant to the Court's Default Standard for Discovery located after a reasonable search that are referring to Satius identified after a reasonable search, if any, and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation.  Samsung is additionally available to meet and confer with Satius regarding any outstanding issue remaining with respect to this Request.

**REQUEST FOR PRODUCTION NO. 11:**

All documents, communications, and things relating to the Asserted Patent.

**RESPONSE TO RFP NO. 11.**

Samsung incorporates by reference its General Objections. Samsung also objects to this Request for production as vague, overly broad, unduly burdensome, and not proportional to the needs of the case in seeking (a) documents merely "relating to the Asserted Patent" without

– 22 –

limits tied to the needs of the case and (b) documents that are in the public domain or already in

Satius's possession, such that the burden of searching for, collecting, or compiling such

documents is substantially the same for Satius as it is for Samsung. Samsung further objects to

this Request to the extent that it seeks documents that are protected by the attorney-client

privilege, work product immunity, or the common interest privilege. Samsung is withholding

privileged and/or work-product protected documents created after the filing of this action.

Subject to the foregoing objections, Samsung responds as follows: Samsung will

produce, on a rolling basis, any non-privileged hardcopy documents and documents from the

data sources listed in Section II of Samsung's Disclosures Pursuant to the Court's Default

Standard for Discovery located after a reasonable search that are referring to the Asserted Patent

identified after a reasonable search, if any, and any non-privileged ESI, if any, collected in

accordance with the parties' ESI stipulation.  Samsung is additionally available to meet and

confer with Satius regarding any outstanding issue remaining with respect to this Request.

**REQUEST FOR PRODUCTION NO. 12:**

All documents, communications and things relating to Your first knowledge or awareness
of the Asserted Patent.

**RESPONSE TO RFP NO. 12.**

Samsung incorporates by reference its General Objections. Samsung objects to this

Request as vague and overly broad as it is unclear what "awareness" means. Samsung also

objects to this Request for production as vague, overly broad, unduly burdensome, not relevant

to any party's claim, and not proportional to the needs of the case in seeking (a) documents

"relating to Your first knowledge or awareness" without limits tied to the needs of the case; and

(b) documents that are already in Satius's possession, such that the burden of searching for,

collecting, or compiling such documents is substantially the same for Satius as it is for Samsung.

Samsung further objects to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, work product immunity, or the common interest privilege. Samsung is withholding privileged and/or work-product protected documents created after the filing of this action.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis, any non-privileged hardcopy documents and documents from the data sources listed in Section II of Samsung's Disclosures Pursuant to the Court's Default Standard for Discovery located after a reasonable search that are sufficient to show the date it first knew of the Asserted Patent, if any, and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation.  Samsung is additionally available to meet and confer with Satius regarding any outstanding issue remaining with respect to this Request.

**REQUEST FOR PRODUCTION NO. 13:**

All documents, communications, and things sufficient to show relating to Your efforts to design around or avoid infringement of the Asserted Patent, Your infringement or alleged non-infringement of the Asserted Patent, comparisons between the Accused Products and the Asserted patent and the validity or alleged invalidity of the Asserted Patent.

**RESPONSE TO RFP NO. 13.**

Samsung incorporates by reference its General Objections. Samsung objects to this Request as compound, vastly over broad and unduly burdensome in that it is seeking documents relating to multiple unrelated subject matters. Samsung further objects to this Request as it appears specifically designed to seek documents that are protected by the attorney-client privilege, work product immunity, or the common interest privilege. Samsung is withholding privileged and/or work-product protected documents created after the filing of this action. Samsung also objects to this Request because the phrase "sufficient to show relating to Your efforts" is vague, ambiguous, and confusing. Samsung also objects to this Request for production

as vague, overly broad, unduly burdensome, not relevant to any party's claim, and not proportional to the needs of the case in seeking (a) documents "sufficient to show relating to Your efforts" without limits tied to the needs of the case; and (b) documents that are in the public domain or already in Satius's possession, such that the burden of searching for, collecting, or compiling such documents is substantially the same for Satius as it is for Samsung. Samsung further objects to this Request to the extent it calls for a legal conclusion regarding infringement or invalidity and to the extent this Request implies that there is or has been any infringement of the Asserted Patent. Samsung denies that it has or is infringing the Asserted Patent. Samsung further objects to this Request as premature to the extent that it seeks expert-related discovery; such discovery will proceed in accordance with the Court's Scheduling Order.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis and in accordance with the Court's Scheduling Order, any non-privileged hardcopy documents and documents from the data sources listed in Section II of Samsung's Disclosures Pursuant to the Court's Default Standard for Discovery located after a reasonable search that are sufficient to show the non-infringement and invalidity of the Asserted Patent, and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation.

**REQUEST FOR PRODUCTION NO. 14:**

All documents, communications, and things sufficient to show the alleged non-infringing alternatives to the invention of the Asserted Patent.

**RESPONSE TO RFP NO. 14.**

Samsung incorporates by reference its General Objections. Samsung further objects to this Request to the extent it calls for a legal conclusion regarding infringement and to the extent this Request implies that there is or has been any infringement of the Asserted Patent. Samsung

– 25 –

denies that it has or is infringing the Asserted Patent. Samsung further objects to this Request as premature to the extent that it seeks expert-related discovery; such discovery will proceed in accordance with the Court's Scheduling Order. Samsung further objects to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, work product immunity, or the common interest privilege. Samsung is withholding privileged and/or work-product protected documents created after the filing of this action. Samsung also objects to this Request for production as vague, overly broad, unduly burdensome, not relevant to any party's claim, and not proportional to the needs of the case in seeking documents that are in the public domain or already in Satius's possession, such that the burden of searching for, collecting, or compiling such documents is substantially the same for Satius as it is for Samsung.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis and in accordance with the Court's Scheduling Order, any non-privileged hardcopy documents and documents from the data sources listed in Section II of Samsung's Disclosures Pursuant to the Court's Default Standard for Discovery located after a reasonable search that are sufficient to show non-infringing alternatives and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation.

**REQUEST FOR PRODUCTION NO. 15:**

All documents, communications, and things relating to alleged prior art to the Asserted Patent, including searches for prior art to the Asserted Patent.

**RESPONSE TO RFP NO. 15.**

Samsung incorporates by reference its General Objections. Samsung further objects to this Request as it appears specifically designed to seek documents that are protected by the attorney-client privilege, work product immunity, or the common interest privilege. Samsung is withholding privileged and/or work-product protected documents created after the filing of this

action. Samsung also objects to this Request for production as vague, overly broad, unduly

burdensome, not relevant to any party's claim, and not proportional to the needs of the case in

seeking (a) documents "relating to alleged prior art" without limits tied to the needs of the case;

and (b) documents that are in the public domain or already in Satius's possession, such that the

burden of searching for, collecting, or compiling such documents is substantially the same for

Satius as it is for Samsung. Samsung further objects to this Request to the extent it calls for a

legal conclusion. Samsung objects that this Request is premature in light of the Court's

Scheduling Order. Samsung further objects to this Request as premature to the extent that it

seeks expert-related discovery; such discovery will proceed in accordance with the Court's

Scheduling Order.

Subject to the foregoing objections, Samsung responds as follows: Samsung will

produce, on a rolling basis and in accordance with the Court's Scheduling Order, any non-

privileged hardcopy documents and documents from the data sources listed in Section II of

Samsung's Disclosures Pursuant to the Court's Default Standard for Discovery located after a

reasonable search that are sufficient to show the prior art that it intends to use in this case, and

any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation.

**REQUEST FOR PRODUCTION NO. 16:**

All documents, communications, and things relating to the validity, invalidity,
enforceability, or unenforceability of the Asserted Patent.

**RESPONSE TO RFP NO. 16.**

Samsung incorporates by reference its General Objections. Samsung also objects to this

Request for production as vague, overly broad, unduly burdensome, not relevant to any party's

claim, and not proportional to the needs of the case in seeking (a) documents "relating to the

validity, invalidity, enforceability, or unenforceability" without limits tied to the needs of the

case; and (b) documents that are in the public domain or already in Satius's possession, such that the burden of searching for, collecting, or compiling such documents is substantially the same for Satius as it is for Samsung. Samsung further objects to this Request to the extent it calls for a legal conclusion. Samsung objects to this Request as premature to the extent that it seeks expert-related discovery; such discovery will proceed in accordance with the Court's Scheduling Order. Samsung further objects to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, work product immunity, or the common interest privilege. Samsung is withholding privileged and/or work-product protected documents created after the filing of this action.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis and in accordance with the Court's Scheduling Order, any non-privileged hardcopy documents and documents from the data sources listed in Section II of Samsung's Disclosures Pursuant to the Court's Default Standard for Discovery located after a reasonable search that are sufficient to show the invalidity and unenforceability of the Asserted Patent, and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation.  Samsung is additionally available to meet and confer with Satius regarding any outstanding issue remaining with respect to this Request.

**REQUEST FOR PRODUCTION NO. 17:**

All documents, communications, and things shared between You and any third party regarding the Asserted Patent.

**RESPONSE TO RFP NO. 17.**

Samsung incorporates by reference its General Objections. Samsung also objects to this Request for production as vague, overly broad, unduly burdensome, not relevant to any party's claim, and not proportional to the needs of the case in seeking documents "shared between You

– 28 –

and any third party" without limits tied to the needs of the case. Samsung further objects to this

Request to the extent that it seeks documents that are protected by the attorney-client privilege,

work product immunity, or the common interest privilege. Samsung is withholding privileged

and/or work-product protected documents created after the filing of this action.

Subject to the foregoing objections, Samsung responds as follows: Samsung will

produce, on a rolling basis, any non-privileged any non-privileged hardcopy documents and

documents from the data sources listed in Section II of Samsung's Disclosures Pursuant to the

Court's Default Standard for Discovery located after a reasonable search that are sufficient to

show correspondence between Samsung and third parties regarding the Asserted Patent, if any,

and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation.

Samsung is additionally available to meet and confer with Satius regarding any outstanding issue

remaining with respect to this Request.

**REQUEST FOR PRODUCTION NO. 18:**

All documents, communications, and things sufficient to show any secondary
consideration or other objective evidence of non-obviousness of the Asserted Patent, including
but not limited to any long-felt need, failure of others, commercial success, copying of the
claimed invention by others, unexpected or superior results from the claimed invention, licensing
or praise by others, criticism by others, or any other objective indicia of non-obviousness.

**RESPONSE TO RFP NO. 18.**

Samsung incorporates by reference its General Objections. Samsung further objects to

this Request to the extent it calls for a legal conclusion regarding invalidity of the Asserted

Patent. Samsung contends that the Asserted Patent is invalid. Samsung further objects to this

Request as premature under the Court's Scheduling Order. Samsung also objects to this Request

for production as vague, overly broad, unduly burdensome, and not proportional to the needs of

the case in that it requests "all documents, communications and things sufficient to show any

secondary consideration or other objective evidence of non-obviousness." Samsung further

objects to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, work product immunity, or the common interest privilege. Samsung is withholding privileged and/or work-product protected documents created after the filing of this action.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis and in accordance with the Court's Scheduling Order, any non-privileged hardcopy documents and documents from the data sources listed in Section II of Samsung's Disclosures Pursuant to the Court's Default Standard for Discovery located after a reasonable search that Samsung intends to rely upon to show the invalidity of the Asserted Patent, including those that show the absence of any secondary considerations, and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation.

**REQUEST FOR PRODUCTION NO. 19:**

All documents, communications, and things concerning any patent or patent application or licensing of patents covering any of the Accused Products, including licenses that You obtained or considered obtaining as well as licenses that You granted or considered granting.

**RESPONSE TO RFP NO. 19.**

Samsung incorporates by reference its General Objections. Samsung also objects to this Request for production as vague, overly broad, unduly burdensome, not relevant to any party's claim, not proportional to the needs of the case in seeking (a) documents "concerning any patent or patent application or licensing of patents covering any of the Accused Products" without limits tied to the needs of the case; (b) documents regarding technology that is wholly unrelated unrelated to the technology of the Asserted Patent; and (c) documents regarding unexecuted licenses. Samsung objects that this Request seeks documents related to third parties that are subject to a protective order, non-disclosure agreement, confidentiality agreement, or other obligation of confidentiality. Regarding third-parties, Samsung shall follow the notice procedures

set out in its General Objections. Samsung further objects to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, work product immunity, or the common interest privilege. Samsung is withholding privileged and/or work-product protected documents created after the filing of this action.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis, any non-privileged hardcopy licenses and licenses from the data sources listed in Section II of Samsung's Disclosures Pursuant to the Court's Default Standard for Discovery located after a reasonable search and dated January 1, 2016 or later for patents covering impedance tuning or cellular antennas, if any, and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation.  Samsung is additionally available to meet and confer with Satius regarding any outstanding issue remaining with respect to this Request.

**REQUEST FOR PRODUCTION NO. 20:**

All documents, communications, and things sufficient to identify payments, revenues, or royalties obtained by Defendants from licensing the Accused Products, including any components, parts, and/or features of such Accused Products.

**RESPONSE TO RFP NO. 20.**

Samsung incorporates by reference its General Objections. Samsung objects to this Request as unintelligible in requesting documents regarding payments "obtained by Defendants from licensing the Accused Products." Samsung also objects to this Request for production as vague, overly broad, unduly burdensome, not relevant to any party's claim, not proportional to the needs of the case in seeking (a) documents regarding payments from "licensing of the Accused Products" without limits tied to the needs of the case and (b) seeks documents regarding licensing of technology that is unrelated to the technology of the Asserted Patent. Samsung objects that this Request seeks documents related to third parties that are subject to a protective

– 31 –

order, non-disclosure agreement, confidentiality agreement, or other obligation of

confidentiality. Regarding third-parties, Samsung shall follow the notice procedures set out in its

General Objections.

Subject to the foregoing objections, Samsung responds as follows: Samsung will

produce, on a rolling basis, any non-privileged hardcopy documents and documents from the

data sources listed in Section II of Samsung's Disclosures Pursuant to the Court's Default

Standard for Discovery located after a reasonable search that are sufficient to show any payments

received by Samsung from licensing impedance tuners and antenna hardware, if any, and any

non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation.  Samsung is

additionally available to meet and confer with Satius regarding any outstanding issue remaining

with respect to this Request.

**REQUEST FOR PRODUCTION NO. 21:**

All documents, communications, and things sufficient to show the first offer for sale and
sale of the Accused Products.

**RESPONSE TO RFP NO. 21.**

Samsung incorporates by reference its General Objections. Samsung also objects to this

Request for production as vague, overly broad, unduly burdensome, not relevant to any party's

claim, not proportional to the needs of the case as unlimited in time and geographic scope,

specifically in regards to sales before, at the very least, June of 2012 and sale of products that

Samsung does not make, use, offer to sell, or sell, within the United States, or import into the

United States. Samsung further objects to this Request to the extent it calls for a legal conclusion.

Samsung further objects that this Request seeks documents related to third parties that are subject

to a protective order, non-disclosure agreement, confidentiality agreement, or other obligation of

confidentiality. Regarding third-parties, Samsung shall follow the notice procedures set out in its General Objections.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis, any non-privileged hardcopy documents and documents from the data sources listed in Section II of Samsung's Disclosures Pursuant to the Court's Default Standard for Discovery located after a reasonable search that are sufficient to show the date of first sale in the United States for the Accused Products that Samsung makes, uses, offers to sell, or sells, within the United States, or imports into the United States during the time period of June 2012-present and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation.

**REQUEST FOR PRODUCTION NO. 22:**

All documents, communications, and things sufficient to show the location where the Accused Products are developed, tested, manufactured, distributed, sold, updated or imported.

**RESPONSE TO RFP NO. 22.**

Samsung incorporates by reference its General Objections. Samsung objects to this Request as vague and confusing in that it is unclear what "updated" means. Samsung also objects to this Request for production as vague, overly broad, unduly burdensome, not relevant to any party's claim, not proportional to the needs of the case in that it (a) seeks documents regarding "the location where the Accused Products are developed, tested, manufactured, distributed, sold, updated or imported" without limits tied to the needs of the case; (b) is unlimited in time and geographic scope; and (c) is not related to the asserted claims of the Asserted Patent. Samsung objects that this Request seeks documents related to third parties that are subject to a protective order, non-disclosure agreement, confidentiality agreement, or other obligation of

confidentiality. Regarding third-parties, Samsung shall follow the notice procedures set out in its General Objections.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis, any non-privileged hardcopy documents and documents from the data sources listed in Section II of Samsung's Disclosures Pursuant to the Court's Default Standard for Discovery located after a reasonable search that are sufficient to show the location where the Accused Products that Samsung makes, uses, offers to sell, or sells, within the United States, or imports into the United States are developed, tested, manufactured, distributed, sold, or imported, and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation.

**REQUEST FOR PRODUCTION NO. 23:**

All documents, communications, and things sufficient to show Your organizational structure with respect to research, development, engineering, manufacture, assembly, testing, marketing, distribution, sale, licensing, updating and importation of each of the Accused Products, including organizational charts.

**RESPONSE TO RFP NO. 23.**

Samsung incorporates by reference its General Objections. Samsung objects to this Request as vague and confusing in that it is unclear what "updating" means. Samsung also objects to this Request for production as vague, vastly overly broad, unduly burdensome, not relevant to any party's claim, not proportional to the needs of the case in it (a) seeks documents regarding "organizational structure with respect to research, development, engineering, manufacture, assembly, testing, marketing, distribution, sale, licensing, updating and importation of each of the Accused Products" without limits tied to the needs of the case; (b) is unlimited in time and scope; (c) is not related to the asserted claims of the Asserted Patent. Samsung objects that this Request seeks documents related to third parties that are subject to a protective order,

non-disclosure agreement, confidentiality agreement, or other obligation of confidentiality. Regarding third-parties, Samsung shall follow the notice procedures set out in its General Objections.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis, any non-privileged hardcopy documents and documents from the data sources listed in Section II of Samsung's Disclosures Pursuant to the Court's Default Standard for Discovery located after a reasonable search that are sufficient to show the top-level corporate organizational structure of SEC and SEA, if any, and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation.

**REQUEST FOR PRODUCTION NO. 24:**

All documents, communications, and things sufficient to show any sales or revenue generated from each of the Accused Products from the year 2012 to the present.

**RESPONSE TO RFP NO. 24.**

Samsung incorporates by reference its General Objections. Samsung also objects to this Request for production as vague, overly broad, unduly burdensome, not relevant to any party's claim, not proportional to the needs of the case in that it is not limited in geographic scope.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis, any non-privileged documents sufficient to show sales by SEA in the United States for the Accused Products that Samsung made, used, offered to sell, or sold, within the United States, or imported into the United States for the time period of June 2012-present and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation.

**REQUEST FOR PRODUCTION NO. 25:**

All documents, communications, and things sufficient to show the sales or revenue forecasts for each of the Accused Products generated in the past ten (10) years, which forecast sales or revenue for the year 2012 or any year past 2012.

**RESPONSE TO RFP NO. 25.**

Samsung incorporates by reference its General Objections. Samsung also objects to this Request for production as vague, overly broad, unduly burdensome, not relevant to any party's claim, not proportional to the needs of the case in that it (a) seeks documents from prior to 2012; (b) is not limited in geographic scope; and (c) seeks forecasts when actual sales data is available.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis, any non-privileged documents sufficient to show sales by SEA in the United States for the Accused Products that Samsung made, used, offered to sell, or sold, within the United States, or imported into the United States for the time period of June 2012-present and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation. Samsung is additionally available to meet and confer with Satius regarding any outstanding issue remaining with respect to this Request.

**REQUEST FOR PRODUCTION NO. 26:**

All documents, communications, and things sufficient to show the market share of each of the Accused Products.

**RESPONSE TO RFP NO. 26.**

Samsung incorporates by reference its General Objections. Samsung objects to this Request as vague and unintelligible as it fails to provide any guidance as to what "market share" plaintiff is referring to, in terms of what market or share comparison the request is referring to. Samsung also objects to this Request for production as vague, overly broad, unduly burdensome, not relevant to any party's claim, not proportional to the needs of the case in that it (a) seeks documents regarding "market share of each of the Accused Products" without limits tied to the needs of the case; and (b) is not limited in time or geographic scope. Samsung objects that this Request seeks documents related to third parties that are subject to a protective order, non-

disclosure agreement, confidentiality agreement, or other obligation of confidentiality. Samsung further objects to this Request as seeking documents that are in the public domain or already in Satius's possession, such that the burden of searching for, collecting, or compiling such documents is substantially the same for Satius as it is for Samsung.

Subject to the foregoing objections, Samsung responds as follows: Subject objects to this request as failing to set forth an intelligible item for which a search can be conducted; the request is thus, at the very least, overbroad and not proportional to the needs of the case.  Samsung is available to meet and confer regarding an appropriate narrowing of the request, if any.

**REQUEST FOR PRODUCTION NO. 27:**

All documents, communications, and things sufficient to show the pricing of each of the Accused Products from the year 2012 to the present.

**RESPONSE TO RFP NO. 27.**

Samsung incorporates by reference its General Objections. Samsung also objects to this Request for production as vague, overly broad, unduly burdensome, not relevant to any party's claim, not proportional to the needs of the case in that it (a) seeks documents regarding "pricing of each of the accused products" without limits tied to the needs of the case; and (b) is not limited in geographic scope. Samsung objects that this Request seeks documents related to third parties that are subject to a protective order, non-disclosure agreement, confidentiality agreement, or other obligation of confidentiality. Regarding third-parties, Samsung shall follow the notice procedures set out in its General Objections.  Samsung further objects to this Request as seeking documents that are in the public domain or already in Satius's possession, such that the burden of searching for, collecting, or compiling such documents is substantially the same for Satius as it is for Samsung.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis, any non-privileged documents sufficient to show sales by SEA in the United States for the Accused Products that Samsung made, used, offered to sell, or sold, within the United States, or imported into the United States for the time period of June 2012-present and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation.

**REQUEST FOR PRODUCTION NO. 28:**

All documents, communications, and things sufficient to show the costs associated with each of the Accused Products from the year 2012 to the present, including but not limited to, production costs, marketing costs, distribution costs, research and development costs, advertising costs and costs to update.

**RESPONSE TO RFP NO. 28.**

Samsung incorporates by reference its General Objections. Samsung also objects to this Request for production as vague, overly broad, unduly burdensome, not relevant to any party's claim, not proportional to the needs of the case in that it (a) seeks documents regarding "costs associated with of each of the Accused Products" without limits tied to the needs of the case; and (b) is not limited in geographic scope. Samsung objects that this Request seeks documents related to third parties that are subject to a protective order, non-disclosure agreement, confidentiality agreement, or other obligation of confidentiality. Regarding third-parties, Samsung shall follow the notice procedures set out in its General Objections.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis, any non-privileged documents sufficient to show the cost of goods sold and operating expenses for the Accused Products that Samsung made, used, offered to sell, or sold, within the United States, or imported into the United States for the time period of June 2012-present and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation.

**REQUEST FOR PRODUCTION NO. 29:**

All documents, communications, and things sufficient to identify the total U.S. revenue (gross and net), U.S. billings (gross and net), and U.S. profits (gross and net) from sales of the Accused Products broken down by type and/or version from the year 2012 until the present.

**RESPONSE TO RFP NO. 29.**

Samsung incorporates by reference its General Objections. Samsung also objects to this Request for production as vague, overly broad, unduly burdensome, not relevant to any party's claim, not proportional to the needs of the case in seeking seeks documents regarding "total U.S. revenue (gross and net), U.S. billings (gross and net), and U.S. profits (gross and net) from sales of the Accused Products" without limits tied to the needs of the case. Samsung objects that this Request seeks documents related to third parties that are subject to a protective order, non-disclosure agreement, confidentiality agreement, or other obligation of confidentiality. Regarding third-parties, Samsung shall follow the notice procedures set out in its General Objections. Samsung further objects to this Request as seeking documents that are in the public domain or already in Satius's possession, such that the burden of searching for, collecting, or compiling such documents is substantially the same for Satius as it is for Samsung.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis, any non-privileged documents sufficient to show sales by SEA in the United States for the Accused Products that Samsung made, used, offered to sell, or sold, within the United States, or imported into the United States for the time period of June 2012-present and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation.

**REQUEST FOR PRODUCTION NO. 30:**

All documents, communications, and things sufficient to identify the total the total foreign revenue (gross and net), foreign billings (gross and net), and foreign profits (gross and net) from sales of the Accused Products broken down by type and/or version from the year 2012 until the present.

**RESPONSE TO RFP NO. 30.**

Samsung incorporates by reference its General Objections. Samsung also objects to this Request for production as vague, overly broad, unduly burdensome, not relevant to any party's claim, not proportional to the needs of the case in that it (a) is unlimited in geographic scope and seeks documents wholly unrelated to any activity in the U.S.; and (b) seeks documents regarding "total foreign revenue (gross and net), foreign billings (gross and net), and foreign profits (gross and net) from sales of the Accused Products" without limits tied to the needs of the case. Samsung further objects to this Request's vague use of "foreign" above, in not explaining what aspect of foreign data the request is seeking, with the request as framed not being proportional to the needs of the case. Samsung objects that this Request seeks documents related to third parties that are subject to a protective order, non-disclosure agreement, confidentiality agreement, or other obligation of confidentiality. Regarding third-parties, Samsung shall follow the notice procedures set out in its General Objections.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis, any non-privileged documents sufficient to show sales by SEA in the United States for the Accused Products that Samsung made, used, offered for sale, or sold, within the United States, or imported into the United States for the time period of June 2012-present and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation. Samsung will not search for and produce documents or information regarding products that are exclusively made, used, offered for sale, and sold, outside of the United States, and not imported into the United States.

**REQUEST FOR PRODUCTION NO. 31:**

Summaries of the revenue, sales, pricing, costs, gross profits, net profits, and market share of each of the Accused Products from the year 2012 to the present.

**RESPONSE TO RFP NO. 31.**

Samsung incorporates by reference its General Objections. Samsung also objects to this Request for production as vague, overly broad, unduly burdensome, not relevant to any party's claim, not proportional to the needs of the case in that it (a) seeks documents regarding "Summaries of the revenue, sales, pricing, costs, gross profits, net profits, and market share of each of the Accused Products" without limits tied to the needs of the case; (b) is unlimited in geographic scope and seeks documents wholly unrelated to any activity in the U.S.; and (c) seeks documents regarding summaries of information already provided in discovery. Samsung objects to this Request as seeking documents that are in the public domain or already in Satius's possession, such that the burden of searching for, collecting, or compiling such documents is substantially the same for Satius as it is for Samsung. Samsung objects to this Request to the extent that it requires or purports to require Samsung to make a special study, perform any calculations, generate documents that do not exist, or provide documents other than those maintained by Samsung in the ordinary course of business. Samsung objects that this Request seeks documents related to third parties that are subject to a protective order, non-disclosure agreement, confidentiality agreement, or other obligation of confidentiality. Regarding third-parties, Samsung shall follow the notice procedures set out in its General Objections.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis, any non-privileged documents sufficient to show sales by SEA in the United States for the Accused Products that Samsung made, used, offered for sale, or sold, within the United States, or imported into the United States for the time period of June 2012-present and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation.

**REQUEST FOR PRODUCTION NO. 32:**

All documents, communications, and things sufficient to show any agreements between You and any third party related to the development, testing, manufacture, distribution, sale, updating, or importation of each of the Accused Products.

**RESPONSE TO RFP NO. 32.**

Samsung incorporates by reference its General Objections. Samsung also objects to this Request for production as vague, hopelessly over broad, unduly burdensome, not relevant to any party's claim, not proportional to the needs of the case in that it (a) seeks documents regarding aspects of Samsung's products that are entirely unrelated to the technology of the Asserted Patent; (b) seeks "agreements between You and any third party related to the development, testing, manufacture, distribution, sale, updating, or importation of each of the Accused Products" without limits tied to the needs of the case; and (c) is unlimited in time and geographic scope. Samsung objects that this Request seeks documents related to third parties that are subject to a protective order, non-disclosure agreement, confidentiality agreement, or other obligation of confidentiality. Regarding third-parties, Samsung shall follow the notice procedures set out in its General Objections.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis, any non-privileged hardcopy agreements and agreements from the data sources listed in Section II of Samsung's Disclosures Pursuant to the Court's Default Standard for Discovery located after a reasonable search that are between Samsung and third-parties regarding impedance tuners for cellular communication incorporated in the Accused Products that Samsung made, used, offered for sale, or sold, within the United States, or imported into the United States, if any, and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation.

**REQUEST FOR PRODUCTION NO. 33:**

– 42 –

All documents, communications, and things sufficient to show the marketing, advertising, or promotion of each of the Accused Products.

**RESPONSE TO RFP NO. 33.**

Samsung incorporates by reference its General Objections. Samsung objects to this Request as massively overbroad, unduly burdensome, and not proportional to the needs of the case in that it seeks documents regarding aspects of Samsung's products that are wholly unrelated to the technology of the Asserted Patent. Samsung also objects to this Request for production as vague, overly broad, unduly burdensome, not relevant to any party's claim, not proportional to the needs of the case in that it (a) fails to provide guidance as to the meaning of "promotion";  (b) seeks "marketing, advertising, or promotion of each of the Accused Products" without limits tied to the needs of the case; and (c) is unlimited in time and geographic scope. Samsung objects that this Request seeks documents related to third parties that are subject to a protective order, non-disclosure agreement, confidentiality agreement, or other obligation of confidentiality. Regarding third-parties, Samsung shall follow the notice procedures set out in its General Objections. Samsung further objects to this Request as seeking documents that are in the public domain or already in Satius's possession, such that the burden of searching for, collecting, or compiling such documents is substantially the same for Satius as it is for Samsung.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis, non-privileged hardcopy documents and documents from the data sources listed in Section II of Samsung's Disclosures Pursuant to the Court's Default Standard for Discovery located after a reasonable search that are sufficient to show marketing and advertising regarding impedance tuners for cellular communication incorporated in the Accused Products that Samsung made, used, offered for sale, or sold, within the United States, or

imported into the United States, if any, and any non-privileged ESI, if any, collected in

accordance with the parties' ESI stipulation.

**REQUEST FOR PRODUCTION NO. 34:**

All documents, communications, and things sufficient to show any market reports, industry reports, competitive analyses, surveys, or studies in the past ten (10) years, related to the Accused Products, any of Your competitors, or any competing products of the Accused Products, including but not limited to any analyses relating to customer purchasing habits, desires, needs, or preferences.

**RESPONSE TO RFP NO. 34.**

Samsung incorporates by reference its General Objections. Samsung also objects to this

Request for production as vague, overly broad, unduly burdensome, not relevant to any party's

claim, not proportional to the needs of the case in that it (a) seeks documents "related to the

Accused Products, any of Your competitors, or any competing products of the Accused

Products" without limits tied to the needs of the case; (b) is unlimited in geographic scope; (c)

requests documents from prior to six-years before filing of this action; and (d) seeks documents

regarding aspects of Samsung's products that are wholly unrelated to the technology of the

Asserted Patent. Samsung objects that this Request seeks documents related to third parties that

are subject to a protective order, non-disclosure agreement, confidentiality agreement, or other

obligation of confidentiality. Regarding third-parties, Samsung shall follow the notice procedures

set out in its General Objections. Samsung further objects to this Request as seeking documents

that are in the public domain or already in Satius's possession, such that the burden of searching

for, collecting, or compiling such documents is substantially the same for Satius as it is for

Samsung.

Subject to the foregoing objections and after any necessary notifications are made to

and/or consents are obtained from third parties, Samsung responds as follows: Samsung will

produce, on a rolling basis, any non-privileged hardcopy documents and documents from the

data sources listed in Section II of Samsung's Disclosures Pursuant to the Court's Default

Standard for Discovery located after a reasonable search that are sufficient to show market

reports, industry reports, competitive analyses, surveys, or studies regarding impedance tuners

for cellular communication incorporated in the Accused Products that Samsung made, used,

offered for sale, or sold, within the United States, or imported into the United States, if any, and

any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation.

**REQUEST FOR PRODUCTION NO. 35:**

All documents, communications, and things sufficient to show any products or services sold, offered for sale, marketed, or bundled with each of the Accused Products from the year 2012 to the present.

**RESPONSE TO RFP NO. 35.**

Samsung incorporates by reference its General Objections. Samsung also objects to this

Request for production as vague, overly broad, unduly burdensome, not relevant to any party's

claim, not proportional to the needs of the case in that it (a) seeks documents "bundled with each

of the Accused Products" without limits tied to the needs of the case; (b) is unlimited in

geographic scope; and (c) seeks documents regarding products or services that are wholly

unrelated to the technology of the Asserted Patent. Samsung objects that this Request seeks

documents related to third parties that are subject to a protective order, non-disclosure

agreement, confidentiality agreement, or other obligation of confidentiality.  Regarding third-

parties, Samsung shall follow the notice procedures set out in its General Objections. Samsung

further objects to this Request as seeking documents that are in the public domain or already in

Satius's possession, such that the burden of searching for, collecting, or compiling such

documents is substantially the same for Satius as it is for Samsung

Subject to the foregoing objections, Samsung responds as follows: Samsung will

produce, on a rolling basis, any non-privileged hardcopy documents and documents from the

data sources listed in Section II of Samsung's Disclosures Pursuant to the Court's Default

Standard for Discovery located after a reasonable search that are sufficient to show bundled

products or services regarding impedance tuners for cellular communication incorporated in the

Accused Products that Samsung made, used, offered for sale, or sold, within the United States, or

imported into the United States, if any, and any non-privileged ESI, if any, collected in

accordance with the parties' ESI stipulation.

**REQUEST FOR PRODUCTION NO. 36:**

All documents, communications, and things identifying each of the Accused Products by type and model number, including any internal names used within Samsung for each of the Accused Products.

**RESPONSE TO RFP NO. 36.**

Samsung incorporates by reference its General Objections. Samsung also objects to this

Request for production as overly broad, not relevant to any party's claim, and not proportional to

the needs of the case. Samsung objects to this Request as seeking documents that are publicly

available or already in Satius's possession, such that the burden of searching for, collecting, or

compiling such documents is substantially the same for Satius as it is for Samsung. Samsung

further objects to this Request to the extent that the information requested may be obtained by

less burdensome discovery mechanisms.

Subject to the foregoing objections, Samsung responds as follows: Samsung will

produce, on a rolling basis, any non-privileged hardcopy documents and documents from the

data sources listed in Section II of Samsung's Disclosures Pursuant to the Court's Default

Standard for Discovery located after a reasonable search that are sufficient to show the model

numbers and internal names for the Accused Products that Samsung made, used, offered for sale,

or sold, within the United States, or imported into the United States, if any, and any non-

privileged ESI, if any, collected in accordance with the parties' ESI stipulation.

– 46 –

**REQUEST FOR PRODUCTION NO. 37:**

All documents, communications, and things relating to the transmission of service in the Accused Products, including Your effort to improve the clarity, speed, reliability, and robustness of service, radio signals, and communication provided through each of the Accused Products.

**RESPONSE TO RFP NO. 37.**

Samsung incorporates by reference its General Objections. Samsung objects to this Request as vague and unintelligible for requesting documents about "transmission of service" and "robustness of service" without providing guidance as to what "service" is being referred to. Samsung also objects to this Request for production as vague, overly broad, unduly burdensome, not relevant to any party's claim, and not proportional to the needs of the case in that it (a) seeks documents "relating to the transmission of service" without limits tied to the needs of the case; (b) is not limited in time or geographic scope; and (c) seeks technical and other documents regarding aspects of Samsung's products that are unrelated to the technology of the Asserted Patent.  Samsung further objects that this Request seeks documents related to third parties that are subject to a protective order, non-disclosure agreement, confidentiality agreement, or other obligation of confidentiality.  Regarding third-parties, Samsung shall follow the notice procedures set out in its General Objections. Samsung further objects to this Request as seeking documents that are in the public domain or already in Satius's possession, such that the burden of searching for, collecting, or compiling such documents is substantially the same for Satius as it is for Samsung.

Subject to the foregoing objections, Samsung responds as follows: Because the Request is garbled and unintelligible in requesting "[a]ll documents, communications, and things relating to the *transmission of service*" without providing any explanation for what the request means by "transmission of service," among the other issues identified above, the request as framed does not provide reasonable guidance as to what materials are sought.  Samsung is thus unable to

ascertain the scope of this Request or the materials for which it seeks to have Samsung conduct a

search and thus Samsung objects to the request as propounded. Samsung respectfully requests

that Satius properly draft any discovery request for any such discovery, such that an intelligible

request for production is set out, specifying the particular items for which discovery is sought.

Samsung further requests that Satius tailor any such request to the needs of the case, rather than

requesting "[a]ll documents, communications, and things."

**REQUEST FOR PRODUCTION NO. 38:**

     All documents, communications, and things relating to the instant litigation.

**RESPONSE TO RFP NO. 38.**

     Samsung incorporates by reference its General Objections. Samsung also objects to this

Request for production as vague, overly broad, unduly burdensome, not relevant to any party's

claim, and not proportional to the needs of the case. Samsung objects that this Request seeks

documents related to third parties that are subject to a protective order, non-disclosure

agreement, confidentiality agreement, or other obligation of confidentiality. Samsung objects to

this Request as seeking documents that are in the public domain or already in Satius's

possession, such that the burden of searching for, collecting, or compiling such documents is

substantially the same for Satius as it is for Samsung. Samsung further objects to this Request to

the extent that it seeks documents that are protected by the attorney-client privilege, work

product immunity, or the common interest privilege. Samsung is withholding privileged and/or

work-product protected documents created after the filing of this action.

     Subject to the foregoing objections, Samsung responds as follows: Samsung will

produce, on a rolling basis, any non-privileged hardcopy documents and documents from the

data sources listed in Section II of Samsung's Disclosures Pursuant to the Court's Default

Standard for Discovery located after a reasonable search that reference this case, if any, and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation. Samsung will also produce, on a rolling basis and in accordance with to the Discovery Rules and the Court's Scheduling Order, any non-privileged documents that Samsung intends to rely on in support of or opposition to any claim or defense in this case. Samsung will also produce, on a rolling basis and according to the Discovery Rules and the Court's Scheduling Order, documents responsive to Satius's Requests for Production as set forth in Samsung's Objections and Responses herein and any subsequent Objections and Responses to Satius's Requests for Production.

**REQUEST FOR PRODUCTION NO. 39:**

All documents, communications, and things on which You intend to rely in support of or opposition to any claim or defense in this litigation.

**RESPONSE TO RFP NO. 39.**

Samsung incorporates by reference its General Objections.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis in accordance with the Discovery Rules and the Court's Scheduling Order, any non-privileged documents that Samsung intends to rely on in support of or opposition to any claim or defense in this case.

**REQUEST FOR PRODUCTION NO. 40:**

All documents, communications, and things relating to damages in this litigation.

**RESPONSE TO RFP NO. 40.**

Samsung incorporates by reference its General Objections. Samsung also objects to this Request for production as vague, overly broad, unduly burdensome, not relevant to any party's claim, not proportional to the needs of the case, including to the extent that it (a) seeks

– 49 –

documents merely "relating to damages"; and (b) is not limited in time or geographic scope. Samsung further objects to this Request to the extent that it calls for a legal conclusion. Samsung expressly denies that Satius is entitled to damages or any relief in this action. Samsung objects that this Request seeks documents related to third parties that are subject to a protective order, non-disclosure agreement, confidentiality agreement, or other obligation of confidentiality. Regarding third-parties, Samsung shall follow the notice procedures set out in its General Objections. Samsung further objects to this Request as premature to the extent that it seeks expert-related discovery; such discovery will proceed in accordance with the Court's Scheduling Order. Samsung further objects to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, work product immunity, or the common interest privilege. Samsung is withholding privileged and/or work-product protected documents created after the filing of this action.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis, any non-privileged documents sufficient to show sales by SEA in the United States for the Accused Products that Samsung made, used, offered to sell, or sold, within the United States, or imported into the United States for the time period of June 2012-present and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation. Samsung will also produce, on a rolling basis in accordance with the Discovery Rules and the Court's Scheduling Order, any non-privileged documents that Samsung intends to rely on in support of or opposition to any claim or defense in this case.

**REQUEST FOR PRODUCTION NO. 41:**

All documents, communications, and things on which You and Your experts intend to rely at trial in this litigation.

**RESPONSE TO RFP NO. 41.**

Samsung incorporates by reference its General Objections. Samsung further objects to this Request as premature to the extent that it seeks expert-related discovery; such discovery will proceed in accordance with the Court's Scheduling Order. Samsung further objects to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, work product immunity, or the common interest privilege. Samsung is withholding privileged and/or work-product protected documents created after the filing of this action.

Subject to the foregoing objections, Samsung will produce, on a rolling basis in accordance with the Discovery Rules and the Court's Scheduling Order, any non-privileged documents that Samsung and its experts intend to rely on at trial in this case.

**REQUEST FOR PRODUCTION NO. 42:**

All contracts with users, customers and developers of the Accused Products.

**RESPONSE TO RFP NO. 42.**

Samsung incorporates by reference its General Objections. Samsung objects to this Request as vastly overbroad, unduly burdensome, inappropriate, not relevant to any party's claim, and not proportional to the needs of the case in seeking contracts with numerous customers. Samsung also objects to this Request for production as vague, overly broad, unduly burdensome, not relevant to any party's claim, not proportional to the needs of the case in that it (a) seeks contracts with "users, customers and developers" without any limits tied to the needs of the case; (b) is not limited in time or geographic scope; and (c) seeks contracts that are unrelated to the technology of the Asserted Patent. Samsung objects that this Request seeks documents related to third parties that are subject to a protective order, non-disclosure agreement, confidentiality agreement, or other obligation of confidentiality. Regarding third-parties, Samsung shall follow the notice procedures set out in its General Objections.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis, any non-privileged terms and conditions documents provided with the Accused Products that Samsung made, used, offered to sell, or sold, within the United States, or imported into the United States for the time period of June 2012-present and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation.

**REQUEST FOR PRODUCTION NO. 43:**

All documents, communications, and things sufficient to show Your policies or practices regarding the retention or destruction of hard copy or electronic documents and hard copy or electronic versions of source code.

**RESPONSE TO RFP NO. 43.**

Samsung incorporates by reference its General Objections. Samsung also objects to this Request for production as not relevant to any party's claim, not proportional to the needs of the case. Samsung further objects to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, work product immunity, or the common interest privilege. Samsung is withholding privileged and/or work-product protected documents created after the filing of this action.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis, any non-privileged documents sufficient to show its document retention policy, if any.

**REQUEST FOR PRODUCTION NO. 44:**

All documents, communications, and things sufficient to show the valuations performed by Defendants or on behalf of Defendants of the Accused Products, including any components, parts, and/or features of such Accused Products.

**RESPONSE TO RFP NO. 44.**

Samsung incorporates by reference its General Objections. Samsung objects to this Request as vague and unintelligible in seeking documents regarding "valuations … of the

– 52 –

Accused Products, including components, parts, and/or features." Samsung also objects to this Request for production as vague, overly broad, unduly burdensome, not relevant to any party's claim, not proportional to the needs of the case in that it (a) seeks documents regarding "valuations performed by Defendants or on behalf of Defendants of the Accused Products" without limits tied to the needs of the case; (b) is not limited in time or scope; and (c) seeks documents that are unrelated to the technology of the Asserted Patent. Samsung objects that this Request seeks documents related to third parties that are subject to a protective order, non-disclosure agreement, confidentiality agreement, or other obligation of confidentiality. Regarding third-parties, Samsung shall follow the notice procedures set out in its General Objections. Samsung further objects to this Request as premature to the extent that it seeks expert-related discovery; such discovery will proceed in accordance with the Court's Scheduling Order.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis, any non-privileged hardcopy documents and documents from the data sources listed in Section II of Samsung's Disclosures Pursuant to the Court's Default Standard for Discovery located after a reasonable search that are sufficient to show the cost of antenna impedance tuners used for cellular transmission in the Accused Products that Samsung makes, uses makes, uses, offers to sell, or sells within the United States or imports into the United States, if any, and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation.

**REQUEST FOR PRODUCTION NO. 45:**

All documents, communications, and things relating to surveys of Your customers regarding the Accused Products and Your competitors' products.

**RESPONSE TO RFP NO. 45.**

Samsung incorporates by reference its General Objections. Samsung also objects to this Request for production as vague, vastly over broad, unduly burdensome, not relevant to any party's claim, not proportional to the needs of the case in that it (a) seeks "surveys of Your customers regarding the Accused Products and Your competitors' products" without limits tied to the needs of the case; (b) is not limited in time or geographic scope; and (c) seeks documents that are wholly unrelated to the technology of the Asserted Patent. Samsung objects that this Request seeks documents related to third parties that are subject to a protective order, non-disclosure agreement, confidentiality agreement, or other obligation of confidentiality. Regarding third-parties, Samsung shall follow the notice procedures set out in its General Objections.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis, any non-privileged hardcopy documents and documents from the data sources listed in Section II of Samsung's Disclosures Pursuant to the Court's Default Standard for Discovery located after a reasonable search that are sufficient to show customer surveys regarding antenna impedance tuners used for cellular transmission in the Accused Products that Samsung makes, uses makes, uses, offers to sell, or sells within the United States or imports into the United States, if any, and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation.

**REQUEST FOR PRODUCTION NO. 46:**

All organizational charts depicting the organizational relationship between Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc.

**RESPONSE TO RFP NO. 46.**

Samsung incorporates by reference its General Objections. Samsung also objects to this Request as vague as it is unclear what "organizational relationship" refers to. Samsung further

– 54 –

objects to this Request as overly broad, unduly burdensome, not relevant to any party's claim, not proportional to the needs of the case.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis, any non-privileged hardcopy documents and documents from the data sources listed in Section II of Samsung's Disclosures Pursuant to the Court's Default Standard for Discovery located after a reasonable search that are sufficient to show the ownership of SEA by SEC, and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation.

**REQUEST FOR PRODUCTION NO. 47:**

Documents sufficient to show how either of Defendants provides, sends, ships, transfers, imports and/or exports the Accused Products.

**RESPONSE TO RFP NO. 47.**

Samsung incorporates by reference its General Objections. Samsung objects to this Request for production as vague, vastly over broad, unduly burdensome, not relevant to any party's claim, not proportional to the needs of the case in that it (a) seeks documents regarding "how either of Defendants provides, sends, ships, transfers, imports and/or exports the Accused Products" without limits tied to the needs of the case; (b) is not limited in time or geographic scope; (c) is directed to activities wholly outside of the U.S.; and (d) seeks documents that are unrelated to the technology of the Asserted Patent. Samsung objects that this Request seeks documents related to third parties that are subject to a protective order, non-disclosure agreement, confidentiality agreement, or other obligation of confidentiality. Regarding third-parties, Samsung shall follow the notice procedures set out in its General Objections.

Subject to the foregoing objections, Samsung responds as follows: As noted, the Request as framed is massively overbroad and Samsung thus objects to the Request as propounded.

– 55 –

Samsung is available to meet and confer with Satius regarding an appropriate narrowing of the scope of this Request, if any.

**REQUEST FOR PRODUCTION NO. 48:**

Documents sufficient to show any supervision or control that Samsung Electronics Co., Ltd. exercises over the sale of the Accused Products within the United States.

**RESPONSE TO RFP NO. 48.**

Samsung incorporates by reference its General Objections. Samsung also objects to this Request for production as vague, overly broad, unduly burdensome, not relevant to any party's claim, not proportional to the needs of the case as it fails to give any guidance as to what "supervision and control" means. Samsung further objects to this Request in that it calls for a legal conclusion and is framed around a legal conclusion, thus not providing proper guidance as to a request for information.

Subject to the foregoing objections, Samsung responds as follows: Samsung will produce, on a rolling basis, any non-privileged hardcopy documents and documents from the data sources listed in Section II of Samsung's Disclosures Pursuant to the Court's Default Standard for Discovery located after a reasonable search that are sufficient to show the top-level corporate organizational structure and ownership of SEA, and any non-privileged ESI, if any, collected in accordance with the parties' ESI stipulation.

Dated: February 21, 2019      By:   */s/ Patrick N. Flynn*

Patrick N. Flynn (pflynn@cov.com)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square
Palo Alto, CA 94306-2112
(650) 632-4700

Richard L. Rainey (rrainey@cov.com)
Brian G. Bieluch (bbieluch@cov.com)
Paul J. Wilson (pwilson@cov.com)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001-4956
(202) 662-6000

Gregory S. Nieberg (gnieberg@cov.com)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1000

Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6000
apoff@ycst.com
pkraman@ycst.com

*Counsel for Defendants*
*Samsung Electronics Co., Ltd.*
*Samsung Electronics America, Inc.*

**CERTIFICATE OF SERVICE**

I,  Patrick N. Flynn, hereby certify that on February 21, 2019, I caused a true and correct

copy of the foregoing document to be served by e-mail upon all counsel of record.


*/s/ Patrick N. Flynn*                       
Patrick N. Flynn (pflynn@cov.com)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square
Palo Alto, CA 94306-2112
(650) 632-4700


*Counsel for Defendants*

# EXHIBIT 4

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY